**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **MULFORD CONSTRUCTION CO., INC.,** | **Case No. 26-13271 (LSS)** |
| **Debtor.** | |

**APPLICATION FOR AUTHORITY TO EMPLOY TRAXI LLC AS**
**FINANCIAL ADVISORS FOR DEBTOR AND DEBTOR-IN-POSSESSION**

Mulford Construction Co., Inc., Debtor and Debtor-in-Possession (the "Debtor"), files this *Application for Authority to Employ Traxi LLC as Financial Advisors for Debtor and Debtor-in-Possession* (the "Application"), and in support thereof, states as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 327.

2. This matter is a core proceeding, pursuant to 28 U.S.C. §157(b)(2)(A).

3. Venue lies properly in this Court, pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The Application is made pursuant to Sections 327(a) and 328(a) of Title 11 of the United States Code (the "Bankruptcy Code").

**The Chapter 11 Case**

5. On March 27, 2026 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this chapter 11 case, and no committee has been appointed or designated.

6.      The Debtor is proceeding under the Court's Complex Chapter 11 Case Procedures as set forth in Appendix I to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Marland (the "Local Rules"). *See* Md. L. Bankr. R., Appendix I.

### The Debtor and its Business Operations

7.      The Debtor is a Maryland corporation that provides construction services for both residential and commercial projects.  It has over 135 employees and operates in the mid-Atlantic area of the United States, with a significant presence in the State of Maryland.

8.      The Debtor provides services in the heavy civil construction area, with the core of the Debtor's business involving site preparation and management for significant construction projects.  The Debtor also provides construction services related to the installation of utilities; piping for water, sewer and storm drains; roadwork; commercial landscaping; and related site clearing and grading.

9.      The Debtor is currently in its fiftieth year of business.  Despite its longevity, recent issues have taken a toll on the Debtor's cash flow forcing it to seek protection under Chapter 11 of the Bankruptcy Code.  The conflation of these events has caused a recent significant reduction in the amount of revenue being generated by the Debtor.  Despite revenue of approximately $58.4 million in 2024, the Debtor's revenue dropped to approximately $56.4 million in 2025.

10.      In 2024, the Debtor was working on a significant residential development project known as "Smith Home Farm." Due to certain improper activities of other parties to the project that were not in the control of the Debtor, the project was foreclosed upon and ceased to move forward.  The Debtor had a significant amount of work on the project at the time the project stopped and was left with approximately $3 million of unpaid invoices.  Despite obtaining a judgment in

2

the Debtor's favor in the amount of approximately $2.7 million in July 2025, the Debtor has received little payment on that judgment.

11. The result of the foregoing has had a significantly negative impact on the Debtor's revenue while simultaneously causing the Debtor to accrue a significant amount of expenses related to the project. Exacerbating the issue, the weather this past winter caused a significant disruption to many of the Debtor's remaining construction projects, limiting the Debtor's ability to complete work on these projects, resulting in a further significant reduction in the Debtor's cash flow.

12. In an effort to bridge the revenue gap facing the Debtor, the Debtor entered into multiple loan transactions in the form of merchant cash advance ("MCA") agreements with various lenders over the past year or so. The MCAs have extremely high effective interest rates built into their agreements with even more extreme and aggressive repayment terms. The funds being drained from the Debtor's account due to the MCAs has made it impossible for the Debtor to continue its operations without the relief afforded by Chapter 11. A significant goal of the Debtor in this bankruptcy case is to address the myriad issues concerning the MCAs as part of an overall restructuring of the Debtor's balance sheet.

13. The Debtor has a significant amount of future revenue under contract with existing jobs that comprise a significant asset of the Debtor's estate. One of the main purposes of this bankruptcy is to provide the Debtor with a runway to realize the revenue of those projects while providing creditors an opportunity for a distribution on pre-petition debt through a plan of reorganization. The only way to realize on this future revenue is for the Debtor to remain in business as a going concern. Additionally, as part of its restructuring, the Debtor has not ruled out

seeking additional capital or perhaps a potential sale of some or all of the Debtor's assets during this bankruptcy case if doing so is feasible and beneficial to the Debtor's estate and creditors.

### The Need for Financial Advisory Services

14.    The Debtor requires the assistance of a financial advisor in order to pursue a successful reorganization.  More specifically, the Debtor requires a financial advisor to assist with implementing cash management strategies, negotiations with stakeholders and MCA creditors, and developing project plans.  The Debtor further requires a financial advisor to, among other things, assist the Debtor with the performance of its duties as a debtor and debtor in possession herein, such as preparing its statement of financial affairs, bankruptcy schedules, account analyses, monthly reports and reconciliations.  In short, the Debtor requires a full range of financial services unique to the reorganization process.

### The Employment of Traxi LLC as Financial Advisors to the Debtor

15.    The Debtor has selected Traxi LLC ("Traxi"), an independent financial consulting firm specializing in corporate restructuring and crisis management, as its financial advisor.  Among other things, Traxi has considerable experience and an excellent reputation in providing high quality financial services to companies in Chapter 11 cases and in other corporate restructurings contexts.  Traxi also has extensive experience providing financial services to companies engaged in the construction industry.  Anthony J. Pacchia, the Founder and Chief Executive Officer of Traxi, and Robert Iommazzo, the Managing Director of Traxi, will be overseeing the financial services rendered to the Debtor.  Mr. Pacchia and Mr. Iommazzo each offer over thirty years of experience in financial, operational, and business consulting services. The Debtor submits that the employment of Traxi under the terms described herein is appropriate under sections 327, 328, and 1107 of the Bankruptcy Code.

**The Services to be Rendered**

16.     The Debtor seeks to retain Traxi to assist with, among other things, the restructuring of its debts and all matters relating to such, subject to approval from this Court.  The professional services that the Debtor may request Traxi to render include:

a.     Assisting with restructuring negotiations with stakeholders and their representatives;

b.     Assisting with negotiations with creditors and MCAs;

c.     Communicating with subcontractors, customers, and vendors as necessary;

d.     Assisting with the development of a short-term cash flow forecast to assist with planning;

e.     Assisting with the development and implementation of cash management strategies and processes;

f.     Assisting with the development of the Debtor's future business plan, and related forecast for us in negotiations with lenders and other stakeholders, and for other corporate purposes;

g.     Advising the Debtors in its oversight and management of financial performance in accordance with the business plan and compliance with the covenants under the debtor-in-possession financing or cash collateral order, if any;

h.     Assisting with developing project plans, including the timing of milestones and milestone interdependencies, communication frameworks, governance structure, resource requirements, and the responsibilities of various project teams/participants;

i.     Assisting with the preparation of the statement of financial affairs, bankruptcy schedules, account analyses, monthly reports, reconciliations, including reconciliations of claims, bankruptcy petitions, the plan of reorganization and other documentation required by the bankruptcy court;

j.     Assisting with providing testimony before the Bankruptcy Court on matters that are within the Traxi's expertise;

k.     Managing and approving the debtors-in-possession expenditures in accordance with the Bankruptcy Court approved budget and any other Bankruptcy Court approved expenditures; and

l.    Providing any and all other financial support services mutually agreed upon by the Debtor and Traxi.

## Traxi Compensation Structure

17.    In the present case, Traxi has received a retainer of $30,000 (applied before the Petition Date), pursuant to the terms of an agreement dated March 26, 2026 (the "Agreement"). Traxi is to be compensated and reimbursed, without limitation, on an hourly rate of $595 for the services of Traxi's Managing Director, $450 for the services of Traxi's Directors, and $300 for the services of Traxi's Senior Associates. The Debtor has further agreed to reimburse Traxi for out-of-pocket expenses incurred while rendering services throughout the bankruptcy case. The Agreement, in was negotiated at arms-length and is similar to other arrangements in the marketplace for financial advisory services. The Debtor believes the terms of the Agreement, including the compensation arrangement, are fair and reasonable.

## Indemnification Provision

18.    As part of the Agreement, the Debtor has agreed to an indemnification provision (the "Indemnification Provision"), which is set forth fully in the Agreement. Pursuant to the Indemnification Provision, the Debtor has agreed to indemnify and hold harmless Traxi and any affiliates of Traxi and their respective directors, members, officers, partners, agents, and employees for any actions taken or omitted to be taken related to or arising out of the Agreement.

19.    Traxi has agreed to reimburse each indemnified person for all reasonable expenses in connection with investigating, preparing or defending any action or claim. However, the Indemnification Provision provides that Traxi will not be responsible for any losses, claims, damages, liabilities, or expenses arising out from conduct that is judicially determined to have resulted primarily from willful misconduct or negligence on the part of the indemnified person.

6

20.     The Debtor believes that the Indemnification Provision reflected in the Agreement is customary and contains reasonable terms of consideration for financial advisors such as Traxi for proceedings both out of court and in chapter 11.  The Indemnification Provision was fully negotiated between the Debtor and Traxi at arm's length, and the Debtor respectfully submits that the Agreement is reasonable and in the best interests of the Debtor, its estate, and creditors.[1]

**Basis for Relief Requested**

21.     Section 327(a) provides that a debtor-in-possession, with the Court's approval may employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons[2], to represent or assist the [debtor-in-possession] in carrying out its duties under this title."  11 U.S.C. § 327(a).  Subject to the Court's approval, the Debtor has broad discretion to employ professionals and establish the terms of the specific employment of professionals. *See David v. King*, 109 F.4th 653, 665 (4th Cir. 2024) ("[T]he Bankruptcy Code gives broad discretion to the bankruptcy court over the appointment of professionals to work on behalf of the trustee and the estate, in part by empowering the court to approve candidates so selected.") (internal quotation marks omitted); *Byrd v. Johnson*, 467 B.R. 832, 848 (D. Md. 2012) ("Section 327 accords the bankruptcy court broad discretion in approving the employment of professionals.") (internal quotation marks omitted).

---

[1]     Indemnification provisions such as those in the Agreement are common in the marketplace.  *See United Artists Theater Co. v. Walton*, 315 F.3d 217, 230 (3d Cir 2003). Indemnification provisions allow a financial advisor to give its best financial advice without fear of liability for being second guessed.  *In re Baltimore Emergency Servs. II, LLC*, 291 B.R. 382, 384 (Bankr. D. Md. 2003) Testing the reasonableness of such provisions is akin to a business judgment assessment.  *Id.*

[2]     A disinterested person is defined as a person that: (i) is not a creditor, equity security holder, or insider of the debtor, (ii) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor, and (iii) does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship with, or interest in the debtor or for any other reason.  11 U.S.C. § 101(14).

22. "[R]eorganizing debtors should not be denied the opportunity to retain a financial advisor on marketplace terms that are reasonable." *In re Baltimore Emergency Servs. II, LLC*, 291 B.R. at 384. This Court has routinely granted applications to employ financial advisors on behalf of debtors. *See Denison Landscaping & Nursery, Inc.*, No. 25-14103 (Bankr. D. Md. Jul. 31, 2025); *In re Prepaid Wireless Group, LLC*, No. 24-18852 (Bankr. D. Md. Nov. 19, 2024); *In re Provisor Federal, Inc.*, No. 24-11528 (Bankr. D. Md. Mar. 18, 2024); *In re Golden Key Group, LLC*, No. 23-10414 (Bankr. D. Md. May 1, 2023); *In re Tessemae's LLC*, No. 23-10675 (Bankr. D. Md. Mar. 21, 2023).

## Connections with Parties-in-Interest

23. To the best of its knowledge, Traxi has no connection with the Debtor, its creditors, or any other party-in-interest in this case, its respective attorneys or accountants, the United States Trustee, or any person employed in the office of the United States Trustee, as described in the Verified Statement of Financial Advisors to be Employed by Debtor and Debtor-in-Possession (the "Verified Statement"), which is filed herewith as **Exhibit A**.

## No Adverse Interest

24. The Verified Statement further indicates that Traxi represents no interest adverse to the Debtor as a debtor-in-possession or to the Debtor's estate in the matters upon which Traxi is to be engaged for the Debtor.

## Disinterested Person

25. Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

(A) is not a creditor, an equity security holder, or an insider;
(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
(C) does not have an interest materially adverse to the interest of the estate or of

8

any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

26. Traxi is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code as evidenced by the Verified Statement.

### Best Interests of The Estate

27. As described herein, Traxi has significant corporate restructuring experience across a variety of industry, including the construction industry specifically. The Debtor submits that the employment and retention of Traxi on the terms set forth in the Agreement would be in the best interest of the Debtor, its estate, and creditors and is appropriate under 11 U.S.C. § 327.

### Compensation

28. Section 328(a) of the Bankruptcy Code permits the employment of a professional "on any reasonable terms and conditions of employment, including on a retainer." 11 U.S.C. § 328(a). Subject to this Court's approval, and in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, and any rules or other procedures that may be fixed by this Court, the Debtor requests that Traxi be compensated, on an hourly basis, for professional services rendered, plus reimbursement of actual and necessary expenses incurred by Traxi. In that regard, Traxi will seek approval of compensation and reimbursement of expenses on a periodic basis in accordance with section 331 of the Bankruptcy Code.

### Local Rule 9013-2 Statement

29. Pursuant to Local Rule 9013-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, the Debtor states that, in lieu of submitting a memorandum in support of this Motion, it will rely solely upon the grounds and authorities set forth herein.

## Conclusion

30.    As set forth above, Traxi satisfies all the requirements for employment as financial

services professional for the Debtor under 11 U.S.C. § 327 and §328.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order authorizing

the Debtor to employ Traxi, LLC as its financial professionals under Sections 327 and 328 of the

Bankruptcy Code and granting such other and further relief as is just and equitable.


Dated: April 8, 2026                                        **TYDINGS & ROSENBERG LLP**


                                                            */s/ Dennis J. Shaffer*
                                                            Richard L. Costella, Bar No. 14095
                                                            Dennis J. Shaffer, Bar No. 25680
                                                            Megan K. Young, Bar. No. 31978
                                                            One East Pratt Street, Suite 901
                                                            Baltimore, Maryland  21202
                                                            Telephone (410) 752-9700
                                                            Email: rcostella@tydings.com
                                                                      dshaffer@tydings.com
                                                                      myoung@tydings.com

                                                            *Proposed counsel to Mulford Construction Co.,*
                                                            *Inc., Debtor and Debtor-in-Possession*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 8th day of April, 2026, the foregoing was served by first class mail or electronic mail, as indicated therein, upon the parties on the attached service list and via the Court's CM/ECF filing system on the parties set forth below:

- **Nathan D. Adler** nda@nqgrg.com, terry@nqgrg.com
- **Shanna Kaminski** skaminski@kaminskilawpllc.com
- **John Tucker Farnum** jfarnum@milesstockbridge.com, jfarnumecfnotices@gmail.com
- **L. Jeanette Rice** Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- **Eli Robbins** erobbins@harrisonlawgroup.com, swilson@harrisonlawgroup.com
- **Brent C. Strickland** bstrickland@whitefordlaw.com, mbaum@whitefordlaw.com;brent-strickland-3227@ecf.pacerpro.com
- **US Trustee - Greenbelt** USTPRegion04.GB.ECF@USDOJ.GOV
- **Andrew C. Stone** astone@andrewstonelaw.com, r43012@notify.bestcase.com
- **Irving Edward Walker** iwalker@coleschotz.com, pratkowiak@coleschotz.com;bankruptcy@coleschotz.com

*/s/ Dennis J. Shaffer*
Dennis J. Shaffer