IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| In re: | Chapter 11 |
| **MULFORD CONSTRUCTION CO., INC.,** | **Case No. 26-13271 (LSS)** |
| Debtor. | |
| **COMMERCIAL CREDIT GROUP, INC.,** | |
| Movant, | |
| v. | |
| **MULFORD CONSTRUCTION CO., INC.,** | |
| Respondent. | |

**DEBTOR'S OBJECTION TO MOTION OF COMMERCIAL CREDIT GROUP, INC.
FOR RELIEF FROM THE AUTOMATIC STAY OF 11 U.S.C. § 362(a)**

Mulford Construction Co., Inc. (the "Debtor"), the above-captioned debtor and debtor in possession, by undersigned counsel, hereby files this *Objection* (the "Objection") to the *Motion for Relief from the Automatic Stay of 11 U.S.C. § 362(a)* ("Motion"),[1] filed by Commercial Credit Group, Inc. ("CCG"), and in support thereof respectfully states:

**PRELIMINARY STATEMENT**

By the Motion, CCG continues its overly aggressive litigation tactics in an attempt to wrongfully repossess the Debtor's equipment. The instant Motion was abruptly filed while the Debtor and CCG were negotiating an appropriate amount of adequate protection payments necessary to protect CCG's interest in its collateral. During those discussions, in addition to

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

6587581.5

seeking adequate protection payments with respect to the equipment that is the subject of this Motion, CCG demanded payment of prepetition obligations on account of other equipment that is leased by the Debtor from a non-debtor affiliate. When the Debtor advised that it could not do so because it would require the Debtor to improperly make prepetition lease payments to the owner of the equipment, CCG filed the Motion and repossessed the equipment in which the Debtor has a leasehold interest. While CCG has since agreed to return the equipment in which the Debtor has a leasehold interest, it continues to prosecute this improper Motion, which does not satisfy the requirements for stay relief under either section 362(d)(1) or (2) of the Bankruptcy Code. Accordingly, for the reasons set forth herein, the Motion should be denied.

**<u>RESPONSE TO ALLEGATIONS IN MOTION</u>**

1.      The Debtor admits the allegation in Paragraph 4 of the Motion that, between 2023 and 2025, the Debtor obtained seven loans from CCG, which the Debtor utilized to purchase equipment necessary for its business operations. The Debtor otherwise denies the allegations in Paragraph 4 of the Motion.

2.      The Debtor admits the allegation in Paragraph 5 of the Motion that it entered into the Loan 1 Note, which speaks for itself. The Debtor otherwise denies the allegations in Paragraph 5 of the Motion.

3.      With respect to the allegations in Paragraph 6 of the Motion, the Loan 1 Note, the Loan 1 UCC-1, and the Lien and Title Information Report attached as Exhibit 2 to the Motion all speak for themselves. The Debtor otherwise denies the allegations in Paragraph 6 of the Motion.

4.      The Debtor admits the allegation in Paragraph 8 of the Motion that it entered into the Loan 2 Note, which speaks for itself. The Debtor otherwise denies the allegations in Paragraph 8 of the Motion.

6587581.5

2

5. With respect to the allegations in Paragraph 9 of the Motion, the Loan 2 Note and the Loan 2 UCC-1 speak for themselves. Exhibit 4 to the Motion does not include a Lien and Title Information Report. The Debtor otherwise denies the allegations in Paragraph 9 of the Motion.

6. The Debtor admits the allegation in Paragraph 11 of the Motion that it entered into the Loan 3 Note, which speaks for itself. The Debtor otherwise denies the allegations in Paragraph 11 of the Motion.

7. With respect to the allegations in Paragraph 12 of the Motion, the Loan 3 Note speaks for itself. The Debtor otherwise denies the allegations in Paragraph 12 of the Motion.

8. With respect to the allegations in Paragraph 13 of the Motion, the Loan 3 UCC-1 speaks for itself. Exhibit 6 to the Motion does not include any Lien and Title Information Reports. The Debtor otherwise denies the allegations in Paragraph 13 of the Motion.

9. The Debtor admits the allegation in Paragraph 15 of the Motion that it entered into the Loan 4 Note, which speaks for itself. The Debtor otherwise denies the allegations in Paragraph 15 of the Motion.

10. With respect to the allegations in Paragraph 16 of the Motion, the Loan 4 Note speaks for itself. The Debtor otherwise denies the allegations in Paragraph 16 of the Motion.

11. With respect to the allegations in Paragraph 17 of the Motion, the Loan 4 UCC-1 and the Lien and Title Information Reports attached as Exhibit 8 to the Motion all speak for themselves. The Debtor otherwise denies the allegations in Paragraph 17 of the Motion.

12. The Debtor admits the allegation in Paragraph 19 of the Motion that it entered into the Loan 5 Note, which speaks for itself. The Debtor otherwise denies the allegations in Paragraph 19 of the Motion.

13. With respect to the allegations in Paragraph 20 of the Motion, the Loan 5 Note

6587581.5

speaks for itself. The Debtor otherwise denies the allegations in Paragraph 20 of the Motion.

14.     With respect to the allegations in Paragraph 21 of the Motion, the Loan 5 UCC-1 speak for itself. Exhibit 10 to the Motion does not include any Lien and Title Information Reports. The Debtor otherwise denies the allegations in Paragraph 21 of the Motion.

15.     The Debtor admits the allegation in Paragraph 23 that it entered into the Loan 6 Note, which speaks for itself. The Debtor otherwise denies the allegations in Paragraph 23 of the Motion.

16.     With respect to the allegations in Paragraph 24 of the Motion, the Loan 6 Note speaks for itself. The Debtor otherwise denies the allegations in Paragraph 24 of the Motion.

17.     With respect to the allegations in Paragraph 25 of the Motion, the Loan 6 UCC-1 and the Lien and Title Information Reports speak for themselves. The Debtor otherwise denies the allegations in Paragraph 25 of the Motion.

18.     The Debtor admits the allegation in Paragraph 27 that it entered into the Loan 7 Note, which speaks for itself. The Debtor otherwise denies the allegations in Paragraph 27 of the Motion.

19.     With respect to the allegations in Paragraph 28 of the Motion, the Loan 7 Note speaks for itself. The Debtor otherwise denies the allegations in Paragraph 28 of the Motion.

20.     With respect to the allegations in Paragraph 29 of the Motion, the Loan 7 UCC-1 speaks for itself. Exhibit 14 to the Motion does not include any Lien and Title Information Reports. The Debtor otherwise denies the allegations in Paragraph 29 of the Motion.

21.     The Debtor denies the allegations in Paragraph 33 of the Motion.

22.     The Debtor admits the allegations in Paragraph 34 of the Motion.

23.     The Debtor admits the allegations in Paragraph 35 of the Motion.

6587581.5

24. The Debtor admits the allegation in Paragraph 36 of the Motion that the prepetition auction resulted in net proceeds to CCG of $465,797.50.  The Debtor denies that it has received net proceeds of $41,092.99 from the auction. The Debtor does not have sufficient information to admit or deny the remaining allegations in Paragraph 36 of the Motion and therefore denies them.

25. The Debtor admits the allegations in Paragraph 37 of the Motion.

26. The Debtor admits the allegations in Paragraph 38 of the Motion.

27. With respect to the allegations in Paragraph 39 of the Motion, the Debtor's schedules of assets and liabilities speak for themselves. The Debtor otherwise denies the allegations in Paragraph 39 of the Motion.

28. With respect to the allegations in Paragraph 40, the Debtor's schedules of assets and liabilities speak for themselves.  In reviewing its internal value of the Equipment, the Debtor values the Equipment subject to the Motion has an estimated current value of $4,139,447.78. The Debtor also notes that it is in the process of preparing amended schedules of assets and liabilities to more accurately reflect the value of the equipment at issue herein, as well as other various items. The Debtor otherwise denies the allegations in Paragraph 40 of the Motion.

29. The Debtor does not have sufficient information to either admit or deny the allegations in Paragraph 41 of the Motion and therefore denies them.

30. The Debtor admits that it has continued to use the Equipment and other Collateral post-petition in the ordinary course of business. With respect to the remaining allegations in Paragraph 42, the Debtor admits that it has not made adequate protection payments to CCG, but that, prior to the filing of the Motion, the Debtor and CCG were engaged in discussions regarding the appropriate amount of adequate protection payments to which CCG is entitled. The Debtor otherwise denies the allegations in Paragraph 42 of the Motion.

6587581.5

31.    The Debtor admits the allegation in Paragraph 43 that the Equipment depreciates like all other assets and is subject to ordinary wear and tear, market fluctuation, but denies that CCG's position will be eroded from delay in enforcement. The Debtor otherwise denies the allegations in Paragraph 43 of the Motion.

32.    With respect to the allegations in Paragraph 44 of the Motion, the Debtor will provide updated valuation information regarding the Equipment to CCG. Moreover, the Debtor has agreed to make the Equipment accessible to CCG so that it may have the Equipment independently appraised. The Debtor otherwise denies the allegations in Paragraph 44 of the Motion.

33.    The Debtor denies the allegations in Paragraph 45 of the Motion.

34.    The Debtor denies the allegations in Paragraph 46 of the Motion.

### Legal Argument

35.    By the Motion, CCG seeks to terminate the automatic stay provisions of section 362 of the Bankruptcy Code to exercise and enforce its rights and remedies with respect to the Equipment. A decision to lift the automatic stay under section 362 is within the discretion of the Bankruptcy Court. *See In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992). The Motion should be denied because CCG is unable to meet the standard for granting the relief requested under either section 362(d)(1) or (d)(2).

### A.    Cause Does Not Exist Under Section 362(d)(1)

36.    Under section 362(d)(1) of the Bankruptcy Code, upon request and after notice and hearing, the Court shall lift the automatic stay "for cause," including the lack of adequate protection of an interest in property of such party in interest[.]" 11 U.S.C. § 362(d)(1). Because the Bankruptcy Code provides no definition of what constitutes "cause," courts must determine

when discretionary relief is appropriate on a case-by-case basis. *See Robbins*, 964 F.2d at 345 (citations omitted). This includes a determination of adequate protection. *See R&J Constr. Servs., LLC v. Vancamp*, 652 B.R. 237, 242 (D. Md. 2023) (holding that adequate protection is determined on a case-by-case basis).

37.     The party requesting relief from stay has the initial burden of proving cause exists for such relief, including lack of adequate protection. *See id.* In considering whether cause exists, "[t]he court must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if it is denied." *Robbins*, 964 F.2d at 345 (citation omitted).

38.     A primary basis for adequate protection is often an equity cushion – where the value of the collateral sufficiently exceeds the amount of the secured debt such that the secured lender is assured it will be paid in full. *See Specialized Loan Servicing LLC v. Bird (In re Bird)*, Case No. 21-11271, 2022 Bankr. LEXIS 417, *5 (Bankr. D. Md. Feb. 18, 2022). "Under the 'equity cushion' theory, if a debtor has equity in a property sufficient to shield the creditor from either the declining value of the collateral or an increase in the claim from accrual of interest or expenses, then the creditor is adequately protected." *R&J Constr. Servs.*, 652 B.R. at 243-44 (citations omitted). "Case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection . . . [and] has almost as uniformly held that an equity cushion under 11% is insufficient to constitute adequate protection . . . . Case law is divided on whether a cushion of 12% to 20% constitutes adequate protection . . . ." *see id*. (citations omitted). *See also Bird*, 2022 Bankr. LEXIS 417 at *5 (citing *In re Mellor*, 734 F. 2d 1396, 1400 (9th Cir. 1984) (holding that a 20% cushion was adequate protection for a secured creditor)).

39.     As CCG notes in the Motion, the Debtor conducted a prepetition auction of 13

pieces of Equipment on which CCG had a first position lien, generating $465,797.50 in net proceeds to CCG, significantly reducing the total amount due and owing to CCG. The Debtor does not object to CCG applying those proceeds to amounts due and owing to it. Comparing the current value of the remaining Equipment ($4,139,447.78) to the amount owed to CCG ($2,884,695.84 [$3,350,493.34 (Scheduled Debt)] minus [$465,797.50 (Unapplied Auction Proceeds)]), the Debtor has at least a 30% equity cushion in the remaining Equipment that is the subject of this Motion. CCG will not be able to carry its burden that it lacks adequate protection.

40. Section 361 of the Bankruptcy Code provides other examples of adequate protection, such as requiring periodic cash payments or providing a replacement lien. *See Bird*, 2022 Bankr. LEXIS 417 at *5 (citing 11 U.S.C. § 361(1)-(3)). As noted above, immediately prior to CCG's filing of the Motion, the Debtor and CCG were negotiating an appropriate monthly adequate protection payment amount, but CCG demanded that the adequate protection payments include default rate interest and payment of prepetition amounts due and owing by the Debtor to Chesapeake Environmental Materials ("CEM"), a non-debtor affiliate of the Debtor, on account of equipment leased to the Debtor by CEM. Because this request would have required the Debtor to make improper payments to CEM of prepetition amounts due and owing, CCG proceeded to illegally repossess the leased equipment over a holiday weekend and filed the instant Motion. To the extent the Court determines that the Debtor does not have an adequate equity cushion in any of the remaining Equipment, the Debtor would agree to make monthly interest payments on account of such Equipment in a proper amount as may be determined by the Court.

41. Ultimately, cause does not exist under section 362(d)(1) for this Court to terminate the automatic stay as the balance of hardships clearly weighs against the relief requested by CCG. While CCG is adequately protected, either through an equity cushion or future monthly interest

6587581.5

payments, allowing CCG to exercise its rights with respect to the Equipment would be devastating to the Debtor's business operations because the equipment at issue is vital construction equipment necessary to perform the services the Debtor is required to perform under its construction contracts. Allowing the repossession pf the equipment (or some other remedy divesting the ability of the Debtor to use such equipment in its normal business operations) would interfere with the Debtor's ability to complete its current projects and obtain lucrative future projects, which are critical to the Debtor's revenue stream and ability to reorganize.

### B.  Relief Under Section 362(d)(2) Also Fails

42.  Section 362(d)(2) of the Bankruptcy Code provides that the bankruptcy court shall grant relief from the automatic stay if: (1) a debtor does not have any equity in the property; and (2) such property is not necessary for an effective reorganization. 11 U.S.C. § 362(d)(2) (emphasis added).

43.  Section 362(d)(2) initially requires a moving party to establish there is no equity in the property that is secured by the loan. *See Bird*, 2022 Bankr. LEXIS 417 at *5. Once the movant makes that showing, the burden is on the debtor to establish that the collateral at issue is "necessary to an effective reorganization." *See id.* at *5 (citing 11 U.S.C. § 362(g)). This requires more than a showing that if there is conceivably to be an effective reorganization, the property will be needed for it. The property must be essential for an effective reorganization "that is in prospect." *See id.* (citing *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76, (1988)). This means there must be "a reasonable possibility of a successful reorganization within a reasonable time." *See Bird*, 2022 Bankr. LEXIS 417 at *5 (citation omitted).

44.  First, CCG will not be able to carry its burden that the Debtor does not have any equity in the Equipment.  It fails to even address this issue in its Motion other than making the

6587581.5

9

bald statement that the Debtor doesn't need the equipment for its reorganization.  Of course, CCG could not substantiate such a blatantly false statement because it is unequivocal that a construction company be able to use its construction equipment to complete its construction jobs.  But, even if CCG is able to show that the Debtor does not have any equity in the Equipment, the Debtor will be able to show that the Equipment is necessary for an effective reorganization.

45.      Indeed, losing the Equipment, the Debtor will face delays or discontinuations in its current projects, which will have disastrous effects on its revenue stream. Losing access to necessary equipment would not only affect the Debtor's pending projects, but also its ability to secure future projects as a lack of access to necessary equipment creates uncertainty for prospective clients. These assertions are not speculative as the Debtor has already faced delays, increased costs, and loss of employees and future business opportunities as a result of CCG's aggressive tactics, including its improper repossession of the equipment leased by the Debtor from CEM. As such, retention of this critical Equipment is central to the Debtor's ability to create a steady stream of revenue to fund a plan of reorganization, and further its ability to remain in operation and avoid conversion to chapter 7 case.

46.      CCG has inaccurately and prematurely asserted that the Debtor cannot propose and confirm a feasible plan of reorganization within a reasonable time. The Debtor is less than three months into the reorganization process and has routinely fulfilled its obligations as a debtor in possession thus far. More specifically, the Debtor is actively seeking and assessing opportunities for lucrative projects, communicating and negotiating with creditors regarding their claims, identifying critical vendors, employing necessary professionals to assist the Debtor, responding to motions filed by creditors in this case and attending hearings relating thereto, and evaluating aspects of its business operations in order to maximize cash flow to fund a plan of reorganization,

6587581.5

10

such as minimizing its workforce, determining which assets to sell, and evaluating the benefits and burdens of its executory contracts and non-residential lease agreements. It is, therefore, both inaccurate and premature for CCG to assert that the Debtor cannot propose and confirm a feasible plan in a  reasonable amount of time.

47.     For the foregoing reasons, the Motion should be denied as the standard for granting the relief has not been met under either section 362(d)(1) or Section 362(d)(2).

WHEREFORE, the Debtor respectfully requests that the Motion for Relief be denied and for such other and further relief the Court seems just and proper.

Dated: June 19, 2026                               Respectfully submitted,

                                                   **TYDINGS & ROSENBERG LLP**

                                                   */s/ Stephen B. Gerald*
                                                   Richard L. Costella, Bar No. 14095
                                                   Dennis J. Shaffer, Bar No. 25680
                                                   Stephen B. Gerald, Bar No. 26590
                                                   Megan K. Young, Bar. No. 31978
                                                   One East Pratt Street, Suite 901
                                                   Baltimore, Maryland  21202
                                                   Telephone (410) 752-9700
                                                   Email:  rcostella@tydings.com
                                                           dshaffer@tydings.com
                                                           myoung@tydings.com

                                                   *Counsel to Mulford Construction Co., Inc.,*
                                                   *Debtor and Debtor-in-Possession*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of June, 2026, the foregoing was served via the

Court's CM/ECF filing system on the parties set forth below:

### ECF Service List:

- **Nathan D. Adler**     nda@nqgrg.com, terry@nqgrg.com
- **Brian E. Barkley**     bbarkley@barkenlaw.com
- **Garrett E. Brierley**     brierley@councilbaradel.com
- **Eugene A Burcher**     eaburcher@thelandlawyers.com
- **Aaron L. Casagrande**     Aaron.casagrande@Icemiller.com
- **Richard L. Costella**     rcostella@tydings.com, myoung@tydings.com;pcoolbaugh@tydings.com
- **Andrea Campbell Davison**     ADavison@beankinney.com, dadragna@beankinney.com
- **Marguerite Lee DeVoll**     mdevoll@watttieder.com, mlindau@watttieder.com
- **Emily Devan**     edevan@milesstockbridge.com
- **Jessica Lynne Duvall**     jduvall@levingann.com, ltress@levingann.com
- **Mark Edelson**     medelson@silvermanthompson.com, dlawal@mdattorney.com
- **John Tucker Farnum**     jfarnum@milesstockbridge.com, jfarnumecfnotices@gmail.com
- **John David Folds**     dfolds@bakerdonelson.com, sparson@bakerdonelson.com
- **James Durling Fullerton**     jfullerton@fullertonlaw.com
- **Shawn Haught**     shaught@wardcolaw.com
- **Kevin G. Hroblak**     kevin.hroblak@icemiller.com, madelin.hill@icemiller.com
- **Darnell E. Ingram**     darnell@deingram.com
- **Michael Kalish**     mkalish@thelandlawyers.com, eaburcher@thelandlawyers.com;mandrews@thelandlawyers.com
- **Shanna Kaminski**     skaminski@kaminskilawpllc.com
- **Emmit F Kellar**     ekellar@bakerdonelson.com, jbedell@bakerdonelson.com
- **Nicole C. Kenworthy**     bdept@mrrlaw.net
- **Jennifer Larkin Kneeland**     jkneeland@watttieder.com, mlindau@watttieder.com
- **Michael J. Levin**     mlevin@silvermanthompson.com
- **Pierce C Murphy**     pmurphy@mdattorney.com, efiling@silvermanthompson.com
- **Andrew Justin Narod**     anarod@bradley.com, tlynch@bradley.com
- **Craig Palik**     cpalik@mhlawyers.com, cpalik@ecf.inforuptcy.com;Palik.CraigR92003@notify.bestcase.com;mevans@mhlawyers.com;cmartin@mhlawyers.com
- **Brandy Michelle Rapp**     brapp@whitefordlaw.com
- **L. Jeanette Rice**     Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- **Eli Robbins**     erobbins@harrisonlawgroup.com, swilson@harrisonlawgroup.com
- **Joel Ruderman**     jruderman@watttieder.com
- **Dennis J. Shaffer**     dshaffer@tydings.com, scalloway@tydings.com;MYoung@tydings.com
- **Robert G. Shuster**     rob@shusterlaw.com, courts@shusterlaw.com

6587581.5

- **Howard S. Stevens**   hstevens@pascalestevens.com
- **Lisa Yonka Stevens**   lstevens@milesstockbridge.com
- **Andrew C. Stone**   astone@andrewstonelaw.com, r43012@notify.bestcase.com
- **Brent C. Strickland**   bstrickland@whitefordlaw.com, mbaum@whitefordlaw.com;brent-strickland-3227@ecf.pacerpro.com
- **US Trustee - Greenbelt**   USTPRegion04.GB.ECF@USDOJ.GOV
- **Jill C Walters**   jwalters@bakerdonelson.com
- **Megan Young**   myoung@tydings.com

*/s/ Stephen B. Gerald*
Stephen B. Gerald