**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **MULFORD CONSTRUCTION CO., INC.,** | **Case No. 26-13271 (LSS)** |
| **Debtor.** | |

**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF ORDER: (I) AUTHORIZING AND APPROVING POST-PETITION SECURED FINANCING, (II) GRANTING SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) AUTHORIZING USE OF CASH COLLATERAL, AND (IV) MODIFYING THE AUTOMATIC STAY**

Mulford Construction Co., Inc. (the "Debtor"), the above-captioned debtor and debtor in possession, by its undersigned proposed counsel, hereby files this *Emergency Motion for Entry of Order: (I) Authorizing and Approving Post-Petition Secured Financing, (II) Granting Security Interests and Superpriority Administrative Expense Status, (III) Authorizing Use of Cash Collateral, and (IV) Modifying The Automatic Stay* (the "Motion") for entry of an order in substantially the form submitted herewith (the "Proposed Order"): (i) authorizing the Debtor to enter into a debtor in possession credit facility with Kurt Fowler ("Mr. Fowler"), the Debtor's Chief Executive Officer and sole owner, pursuant to the terms of the Debtor in Possession Secured Promissory Note (the "Note") and Debtor in Possession Security Agreement (the "Security Agreement"), collectively attached hereto as **Exhibit A** (as amended, modified and in effect from time to time, and together with any and all related documents and agreements entered into in connection with or related to the debtor in possession credit facility, the "DIP Credit Agreement");[1] (ii) authorizing the granting of liens on post-petition collateral to Mr. Fowler; (iii) authorizing the

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Credit Agreement.

6607575.2

1

use of Cash Collateral (as defined below); and (iv) modifying the automatic stay.  In support of this Motion, the Debtor respectfully states as follows:

## **INTRODUCTION**

1.      The Debtor is in immediate need of a cash infusion to maintain its business operations, primarily as a result of payment interruptions from owners and general contractors for work previously performed by the Debtor both pre-petition and post-petition.  These payment interruptions have resulted in a significant blow to the Debtor's anticipated cashflow, placing this chapter 11 case in jeopardy.  In an effort to shore up the funding of the Debtor's operations on a short-term basis, the Debtor's sole equity holder and chief executive officer has agreed to lend funds to the Debtor to see it through its recent struggles.  The Debtor anticipates that certain receivables will be monetized shortly, which will ease the Debtor's cashflow issues.  However, the Debtor may need to cover essential payments, such as payroll and other ongoing operating expenses in the near-term as set forth in the eight week cashflow budget (the "Budget") attached hereto as **Exhibit B**.  Thus, the Debtor seeks approval of the DIP Credit Agreement with Mr. Fowler, providing secured financing in the amount of up to $400,000.00 (the "DIP Credit Facility"). The DIP Credit Facility will be used to fund necessary and ordinary course of business expenses of the Debtor, as well as expenses of this Chapter 11 case to the extent approved by the Court.

2.      The DIP Credit Facility will significantly contribute to the success of this case by providing the Debtor with the instant liquidity necessary to preserve its business as a going concern.  The Debtor requires access to the liquidity provided by the DIP Credit Facility to permit, among other things: (a) the orderly operation of the Debtor's business, (b) the management and preservation of the Debtor's assets, (c) the maintenance of the Debtor's business relationships with

6607575.2

customers, vendors, and contract parties, and (d) the satisfaction of other working capital and operational needs.

## JURISDICTION AND VENUE

3.       This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and *Standing Order* 2012-05 from the United States District Court for the District of Maryland. This matter is a core proceeding, pursuant to 28 U.S.C. §157(b)(2)(A). Venue lies properly in this Court, pursuant to 28 U.S.C. §§ 1408 and 1409.

4.       The statutory bases for relief requested herein are sections 105, 362, 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-4 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Bankruptcy Rules").

## THE CHAPTER 11 CASE

5.       On March 27, 2026 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in this chapter 11 case, and no committee has been appointed or designated.

6.       The Debtor is proceeding under the Court's Complex Chapter 11 Case Procedures as set forth in Appendix I of the Local Rules. *See* Md. L. Bankr. R., Appendix I.

## THE DEBTOR AND ITS BUSINESS OPERATION

7.       The Debtor is a Maryland corporation that provides construction services for both residential and commercial projects.  As of the Petition Date, it had over 135 employees and

6607575.2

3

operates in the mid-Atlantic area of the United States, with a significant presence in the State of Maryland.

8.      The Debtor provides services in the heavy civil construction area, with the core of the Debtor's business involving site preparation and management for significant construction projects.  The Debtor also provides construction services related to the installation of utilities; piping for water, sewer and storm drains; roadwork; commercial landscaping; and related site clearing and grading.

9.      The Debtor is currently in its fiftieth year of business.  Despite its longevity, recent issues have taken a toll on the Debtor's cash flow forcing it to seek protection under Chapter 11 of the Bankruptcy Code.  The conflation of these events has caused a recent significant reduction in the amount of revenue being generated by the Debtor.  Despite revenue of approximately $58.4 million in 2024, the Debtor's revenue dropped to approximately $56.4 million in 2025.

10.     In 2024, the Debtor was working on a significant residential development project known as "Smith Home Farm." Due to certain improper activities of other parties to the project that were not in the control of the Debtor, the project was foreclosed upon and ceased to move forward.  The Debtor had a significant amount of work on the project at the time the project stopped and was left with approximately $3 million of unpaid invoices.  Despite obtaining a judgment in the Debtor's favor in the amount of approximately $2.7 million in July 2025, the Debtor has received little payment on that judgment.

11.     The result of the foregoing has had a significantly negative impact on the Debtor's revenue while simultaneously causing the Debtor to accrue a significant amount of expenses related to the project.  Exacerbating the issue, the weather this past winter caused a significant disruption to many of the Debtor's remaining construction projects, limiting the Debtor's ability

6607575.2

4

to complete work on these projects, resulting in a further significant reduction in the Debtor's cash flow.

12.     In an effort to bridge the revenue gap facing the Debtor, the Debtor entered into multiple loan transactions in the form of merchant cash advance ("MCA") agreements with various lenders over the past year or so.  The MCAs have extremely high effective interest rates built into their agreements with even more extreme and aggressive repayment terms.  The funds being drained from the Debtor's account due to the MCAs has made it impossible for the Debtor to continue its operations without the relief afforded by Chapter 11.  A significant goal of the Debtor in this bankruptcy case is to address the myriad issues concerning the MCAs as part of an overall restructuring of the Debtor's balance sheet.

13.     The Debtor has a significant amount of future revenue under contract with existing jobs that comprise a significant asset of the Debtor's estate.  One of the main purposes of this bankruptcy is to provide the Debtor with a runway to realize the revenue of those projects while providing creditors an opportunity for a distribution on pre-petition debt through a plan of reorganization.  The only way to realize on this future revenue is for the Debtor to remain in business as a going concern.  Additionally, as part of its restructuring, the Debtor has not ruled out seeking additional capital or perhaps a potential sale of some or all of the Debtor's assets during this bankruptcy case if doing so is feasible and beneficial to the Debtor's estate and creditors.

## **RELIEF REQUESTED**

14.     By this Motion, the Debtor seeks entry of the Proposed Order authorizing and/or approving, *inter alia*:

> A.     Under Bankruptcy Code section 364(c), authorizing the Debtor to obtain post-petition financing from Mr. Fowler, consisting of up to $400,000.00 under the terms of the DIP Credit Agreement;

6607575.2

B. Under Bankruptcy Code section 364(c)(1), and subject to the limitations set forth in the DIP Credit Agreement, approving the grant of a Superpriority Claim (as defined and set forth in detail in the Proposed Order) for the benefit of Mr. Fowler;

C. Under sections 364(c)(2) and (c)(3) of the Bankruptcy Code, and as security for the repayment of the borrowings and all other obligations arising under the DIP Credit Agreement, authorizing the Debtor to grant Mr. Fowler security interests in and liens upon post-petition assets of the Debtor that are not otherwise Pre-Petition Collateral, plus junior security interests on all assets of the Debtor that are otherwise subject to pre-petition liens (collectively, the "Post-Petition Collateral").

D. Under Bankruptcy Code sections 361 and 363(e), authorizing the Debtor to use the prepetition cash collateral; and

E. Under Bankruptcy Code sections 363 and 364, authorizing the Debtor to use the proceeds of the DIP Credit Facility for, among other things, payment of the amounts owed to Mr. Fowler under the facility, working capital, general corporate purposes and ordinary course transactions, Court approved fees and expenses of the Debtor's professionals, and other Court approved expenses.

## THE DIP CREDIT FACILITY

15. The significant terms of the DIP Credit Agreement and proposed Order are as follows:[2]

| Bankruptcy Rule 4001(c)(1)(B) Statements | | Location |
|---|---|---|
| Borrower: | Mulford Construction Co., Inc. | Proposed Order - preamble Note – preamble Security Agreement- preamble |
| DIP Lender: | Kurt Fowler | Proposed Order - preamble Note – preamble Security Agreement- preamble |
| Credit Facility: | $400,000.00 DIP Credit Agreement for the following purposes: (i) to | Proposed Order- p. 2, 3; §1.2 |

---

[2] This summary is qualified in its entirety by reference to the provisions of the DIP Credit Agreement and the Proposed Order.

|  | fund a portion of the Debtor's overhead expenses during the term of the loan and until the Maturity Date; (ii) to pay the Court approved costs and fees of the Debtor's professionals; and (iii) to pay to Mr. Fowler certain fees owed to him under the DIP Credit Agreement as set forth therein. | Note – preamble<br>Security Agreement- §I |
| --- | --- | --- |
| Availability: | Mr. Fowler will make advances to the Debtor under the DIP Credit Agreement for the purposes outlined above.  All advances under the DIP Credit Facility shall be subject to such terms, covenants, conditions and submissions to Mr. Fowler as the DIP Credit Agreement may require. | Proposed Order- pg. 3; §§1.2, 1.4<br>Note - §1<br><br>Security Agreement - §§V, VI |
| Interest Rate: | 10% per annum.   Default Rate = 12% per annum. | Note – §2; §9 |
| Fee: | N/A | |
| Payments/Amortization DIP Credit Facility: | Mr. Fowler shall apply any payments or proceeds first to the Debtor's obligations until such obligations are paid and satisfied in full. | Proposed Order - §1.4<br>Note – §4 |
| Maturity Date: | The DIP Credit Agreement shall continue in full force and effect for a term ending December 31, 2026 unless extended by agreement by the parties in writing or the date on which the Chapter 11 Case is dismissed or converted to Chapter 7 under the Bankruptcy Code. | Note – Preamble |
| Collateral: | All advances made under the DIP Credit Agreement and all obligations and duties of the Debtor under the agreement shall be secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first priority, priming senior security interests in, and liens upon, all Prepetition Collateral and Post- | Proposed Order – §2.1<br>Security Agreement - §§4; 6.4; 6.5 |

| | | |
|---|---|---|
| | petition Collateral which shall include, collectively, all personal property of Debtor's estate, wherever located, of any kind, nature or description, excluding Avoidance Actions. | |
| Super-priority: | Super-priority administrative claims pursuant to Section 364(c) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, and over any and all administrative expenses or priority claims, provided, however, the Super-priority Claim shall be subject only to the extent expressly set forth in the Proposed Order. | Proposed Order - §2.2 |
| Events of Default: | Among others: (a) failure to comply with obligations; (b) conversion of case to Chapter 7; (c) dismissal of case. | Proposed Order - §3.1 Note - §7 |
| Automatic Stay: | Vacated without further order of the Bankruptcy Court to the extent necessary to permit Mr. Fowler to record liens and to exercise his rights and remedies as provided for in the Proposed Order. | Proposed Order - §2.1.3; 3.2; 3.3; 4.1 |
| **Local Rule 4001-5 Statements** | | **Location** |
| Cross Collateralization | The Proposed Order does not provide for cross collateralization. | N/A |
| Challenge Period | The Proposed Order does not seek to bind the estate or other parties in interest with respect to the validity, perfection, or amount of Mr. Fowler's prepetition lien or the waiver of claims against Mr. Fowler. | N/A |
| Section 506(c) Waiver | The Proposed Order does not seek to waive, without notice, whatever rights the estate may have under 11 U.S.C. § 506(c). | N/A |
| Liens on Avoidance Actions | The Proposed Order does not include provisions that immediately grant to Mr. Fowler liens on the Debtor's claims and causes of action | N/A |

| | | |
|---|---|---|
| | arising under 11 U.S.C. §§ 544, 545, 547, 548 and 549. | |
| Provisions Deeming Prepetition Debt to be Post-petition Debt | The Proposed Order does not provide for a roll up. | N/A |
| Treatment of Professionals | The Proposed Order does not include provisions that provide treatment for the professionals retained by a committee appointed by the United States Trustee different from those professionals retained by the debtor with respect to a professional fee carve-out or provisions that limit the committee's attorney's use of the carve-out. | N/A |
| Non-Consensual Liens | The Proposed Order provides a superior lien to Mr. Fowler solely with respect to post-petition assets of the Debtor, subject to certain Permitted Liens and Claims. | Proposed Order – §2.1 |
| Relief from Automatic Stay | The Proposed Order does not include provisions that grant Mr. Fowler relief from the automatic stay, whether by terminating, modifying, or conditioning the stay, without further order of the Court. | N/A |

## BASIS FOR RELIEF REQUESTED

### A.    The Debtor's Need for Liquidity.

16.    The Debtor will not have sufficient available sources of working capital, including cash collateral, to operate in the ordinary course of its business without the financing requested in this Motion for the full duration of this chapter 11 case. Further, the Debtor may have immediate need for liquidity to cover expenses in the near-term depending on the timing of payment of its receivables. The Debtor's ability to maintain business relationships with its vendors, suppliers, and customers, to pay its employees, and to otherwise fund its operations is essential to the Debtor's continued viability, as the Debtor seeks to effectuate a reorganization. The ability of the

Debtor to obtain sufficient working capital and liquidity through the proposed post-petition financing is vital to the preservation and maintenance of the going concern value of the Debtor.

17. Due to the difficulty the Debtor has been having in certain collections of receivables, the Debtor has an immediate need to obtain post-petition financing in order to permit the continuation of the operation of its business, minimize the disruption of its business operations, and preserve and maximize the value of the assets of the Debtor's bankruptcy estate for the benefit of all stakeholders of the estate.

18. In light of the circumstances, the Debtor has engaged in good faith with Mr. Fowler through its professionals to provide the emergency funding proposed hereunfder. The Debtor's attempts to obtain a larger debtor-in-possession credit facility are ongoing, but no agreement has yet been reached with any potential lender. As a result of the foregoing, the Debtor has reached an agreement with Mr. Fowler, which will address the Debtor's immediate need for financing.

19. The Debtor seeks authority to borrow up to $400,000.00 upon entry of the Proposed Order. With this liquidity afforded by the DIP Credit Facility, the Debtor believes it will be able to continue operations in the ordinary course of business.

**B. The Court Should Authorize the Debtor to Incur Post-petition Debt Secured by a Lien and Grant Super-Priority Administrative Priority.**

20. This Court should authorize the Debtor to obtain the DIP Credit Facility, secured by post-petition liens, and should grant the DIP Credit Facility obligations super-priority administrative claim status pursuant to section 364 of the Bankruptcy Code, except as set forth herein.

21. Section 364 of the Bankruptcy Code permits debtors to obtain post-petition credit but provides different requirements depending upon whether the credit is: (a) unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, (b)

6607575.2

10

unsecured credit allowable as a super-priority administrative expense, or (c) secured credit with varying lien priorities. 11 U.S.C. § 364. Specifically, pursuant to section 364(c), if a debtor is unable to obtain unsecured credit allowable as an administrative expense, then the Court, after notice and a hearing, may authorize the debtor to obtain credit or incur debt "(1) with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien." 11 U.S.C. § 364(c).

22.     Generally, sections 364(c) and (d) of the Bankruptcy Code require debtors to demonstrate that they are unable to obtain unsecured credit allowable under section 503(b)(1) as an administrative expense pursuant to sections 364(a) or (b). *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[A] debtor is not required to seek credit from every possible source . . . [but only to] show that it has made a reasonable effort to seek other sources of credit available"); *see also Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (hereafter "*Snowshoe*") (finding that although there is "no duty to seek credit from every possible lender before concluding that such credit is unavailable," the statute requires a debtor to show "by a good faith effort that credit was not available without the senior lien").

23.     Against this statutory backdrop, courts evaluate the facts and circumstances of a debtor's case and accord significant weight to the debtor's business judgment regarding the necessity for obtaining the financing. *See, e.g., Snowshoe*, 789 F.2d at 1088; *Ames*, 115 B.R. at 40. For example, the need for a swift injection of cash to preserve a debtor's business satisfies the requirements of Bankruptcy Code section 364(d) when coupled with unsuccessful attempts to locate alternative financing. *See, e.g., Snowshoe*, 789 F.2d at 1088 (primary facts supporting post-

6607575.2

petition liens included lack of alternative financing sources and need to obtain prompt cash infusion to preserve value of debtor's business); *Ames*, 115 B.R. at 40.

24.     The Debtor has analyzed its needs for additional cash and has determined that it will likely be unable to continue the business and implement its business plan in the long run, without the proposed financing providing some immediate liquidity to fund the Debtor's continuing operations. Accordingly, the Debtor has reviewed the options available to obtain the necessary financing.  The Debtor, through its financial advisor, has been seeking potential financing since the inception of this bankruptcy case and has been in discussions with multiple potential lenders in respect thereof.  To date, no agreement has been reached with a potential lender, although discussions continue with certain of these parties.

25.     At this time, the Debtor has concluded that it is unable to obtain the required funds from a different lender in the form of unsecured debt allowed under section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to section 364(a) or (b), or debt having the priority afforded by section 364(c)(1), or debt secured as limited by section 364(c)(2) or (3). Therefore, the Debtor has concluded that the proposed DIP Credit Facility provided by Mr. Fowler is the most favorable under the circumstances as it addresses the Debtor's immediate working capital needs and is immediately available.

26.     Based on all of the above, the Debtor's decision to enter into the DIP Credit Agreement represents an exercise of sound business judgment. Without immediate financing, the Debtor may be unable to sustain its operations as a going concern and could run out of money to pay its suppliers and employees while it awaits collection of its receivables.  The financing under the DIP Credit Facility addresses this need by providing the Debtor with funds necessary to meet ongoing operating needs and by enabling the Debtor to continue its restructuring efforts.

6607575.2

27.     Even though Mr. Fowler wears two hats with respect to the proposed DIP Credit Agreement as the CEO of the Debtor on the one hand and the lender on the other hand, Mr. Fowler has agreed to provide immediate financing to the Debtor under the DIP Credit Facility in good faith. At this time, the DIP Credit Agreement represents the best financing arrangement the Debtor could immediately obtain under the circumstances.

28.     The adequate protection being provided is also reasonable and necessary under the circumstances. As set forth in the Proposed Order, Mr. Fowler will be granted post-petition liens against the Debtor's assets to secure the obligations under the DIP Credit Agreement. The provisions in the Proposed Order include the following:

A.     <u>Granting of Liens</u>. Mr. Fowler shall be granted, effective as of the Petition Date, valid and perfected, security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtor's Estate may have as and to the extent expressly provided therein, in and upon the Post-Petition Collateral. Mr. Fowler shall be granted, effective as of the Petition Date, valid and perfected, security interests and liens, on the Pre-Petition Collateral junior to pre-existing liens on such collateral.

B.     <u>Lien Priority</u>. The post-petition liens and security interests of Mr. Fowler granted under the DIP Credit Agreement and this Order in the Post-Petition Collateral shall be and shall continue to be priming first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, in conjunction with Section 363, 364 or any other Section of the Bankruptcy Code or other applicable law; provided, however, that Mr. Fowler's liens on and security interests in the Post-Petition Collateral shall be subject only to the Carve Out Expenses (as defined in the Proposed Order) solely to the extent provided for therein.

6607575.2

13

C. <u>Post-Petition Lien Perfection</u>. The entry by the Court of the Proposed Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Post-Petition Collateral or the Pre-Petition Collateral, or other act to validate or perfect such security interest or lien.

29. In addition to the post-petition liens, Mr. Fowler will also be granted a superpriority administrative expense claim against the Debtor's estate pursuant to Section 364(c)(1) of the Bankruptcy Code. This claim will have priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtor, whether now in existence or hereafter incurred by the Debtor, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726 or 1114 of the Bankruptcy Code (the "<u>Superpriority Claim</u>"), <u>provided</u>, <u>however</u>, the Superpriority Claim shall be subject to the Permitted Liens and Claims as and to the extent expressly set forth in the Proposed Order.

30. The Debtor believes that the forms of adequate protection provided to Mr. Fowler are necessary and appropriate under the circumstances. The consequences of failing to approve the DIP Credit Agreement would be very harmful to the Debtor, its creditors, and other parties in interest. Without the granting of the relief requested by this Motion, the Debtor's ability to remain in business will be jeopardized and the prospect of a successful reorganization will be adversely affected. Accordingly, approval of the DIP Credit Agreement is in the best interest of the Debtor, creditors and the estate.

6607575.2

14

C.        **The Court Should Permit the Use of Cash Collateral**.

31.        Section 363 of the Bankruptcy Code generally governs the use of estate property. Section 363(c)(2) provides that:

> The trustee may not use, sell or lease cash collateral . . . unless –
>
> > (A) each entity that has an interest in such cash collateral consents; or
> >
> > (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2). Section 363(e) provides for adequate protection of interests in property when a debtor uses cash collateral.

32.        Here, Mr. Fowler consents to the use of cash collateral by the Debtor to operate its business in chapter 11 within the Debtor's discretion and business judgment.   A separate stipulation will be placed on the record in this case to indicate such consent.

## WAIVER OF MEMORANDUM OF LAW

33.        Pursuant to Local Rule 9013-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, the Debtor states that, in lieu of submitting a memorandum in support of this Motion, it will rely solely upon the grounds and authorities set forth herein.

**WHEREFORE**, the Debtor respectfully requests that the Court enter the Proposed Order and the Final Order granting the relief requested herein, and such other and further relief as the Court deems just and proper.

Dated: July 27, 2026                                Respectfully submitted,

                                                                **TYDINGS & ROSENBERG LLP**

                                                                */s/ Dennis J. Shaffer*
                                                                Richard L. Costella, Bar No. 14095

6607575.2

15

Dennis J. Shaffer, Bar No. 25680
One East Pratt Street, Suite 901
Baltimore, Maryland  21202
Telephone (410) 752-9700
Email:  rcostella@tydings.com
        dshaffer@tydings.com

*Counsel for Mulford Construction Co., Inc.,*
*Debtor and Debtor in Possession*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 27th day of July, 2026, the foregoing was served via the

Court's CM/ECF filing system on the parties set forth below and by first class mail, postage

prepaid, on the parties on the attached service list:

**Nathan D. Adler**    nda@nqgrg.com, terry@nqgrg.com
**Brian E. Barkley**    bbarkley@barkenlaw.com
**Jodie E. Bekman**    jbekman@gfrlaw.com, dferguson@gfrlaw.com
**Garrett E. Brierley**    brierley@councilbaradel.com
**Eugene A Burcher**    eaburcher@thelandlawyers.com
**Aaron L. Casagrande**    Aaron.casagrande@Icemiller.com
**Richard L. Costella**    rcostella@tydings.com,
myoung@tydings.com;pcoolbaugh@tydings.com
**Andrea Campbell Davison**    ADavison@beankinney.com, dadragna@beankinney.com
**Marguerite Lee DeVoll**    mdevoll@watttieder.com, mlindau@watttieder.com
**Emily Devan**    edevan@milesstockbridge.com
**Jessica Lynne Duvall**    jduvall@levingann.com, ltress@levingann.com
**Mark Edelson**    medelson@silvermanthompson.com, dlawal@mdattorney.com
**John Tucker Farnum**    jfarnum@milesstockbridge.com, jfarnumecfnotices@gmail.com
**Justin Philip Fasano**    jfasano@mhlawyers.com,
jfasano@ecf.courtdrive.com;tmackey@mhlawyers.com;mevans@mhlawyers.com;cmartin@
mhlawyers.com;Fasano.JustinR92003@notify.bestcase.com
**Ashley N Fellona**    ashley.fellona@saul.com, janice.mast@saul.com
**John David Folds**    dfolds@bakerdonelson.com, sparson@bakerdonelson.com
**James Durling Fullerton**    jfullerton@fullertonlaw.com
**Stanford G. Gann**    sgannjr@levingann.com
**Stephen B. Gerald**    sgerald@tydings.com
**Shawn Haught**    shaught@wardcolaw.com
**Alan C. Hochheiser**    ahochheiser@mauricewutscher.com
**Kevin G. Hroblak**    kevin.hroblak@icemiller.com, madelin.hill@icemiller.com
**Darnell E. Ingram**    darnell@deingram.com

6607575.2

16

**Michael Kalish**    mkalish@thelandlawyers.com,
eaburcher@thelandlawyers.com;mandrews@thelandlawyers.com
**Shanna Kaminski**    skaminski@kaminskilawpllc.com
**Emmit F Kellar**    ekellar@bakerdonelson.com, jbedell@bakerdonelson.com
**Nicole C. Kenworthy**    bdept@mrrlaw.net
**Michael J Klima**    Jklima@kpdlawgroup.com
**Jennifer Larkin Kneeland**    jkneeland@watttieder.com, mlindau@watttieder.com
**Michael J. Levin**    mlevin@silvermanthompson.com
**Pierce C Murphy**    pmurphy@mdattorney.com, efiling@silvermanthompson.com
**Andrew Justin Narod**    anarod@bradley.com, tlynch@bradley.com
**Craig Palik**    cpalik@mhlawyers.com,
cpalik@ecf.inforuptcy.com;Palik.CraigR92003@notify.bestcase.com;mevans@mhlawyers.c
om;cmartin@mhlawyers.com
**Brandy Michelle Rapp**    brapp@whitefordlaw.com
**L. Jeanette Rice**    Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
**Eli Robbins**    erobbins@harrisonlawgroup.com, swilson@harrisonlawgroup.com
**Joel Ruderman**    jruderman@watttieder.com
**Marc E. Shach**    mes@cooncolelaw.com,
mes@cooncolelaw.com;ccc@cooncolelaw.com;dhc@cooncolelaw.com;zjac@cooncolelaw.c
om;cmh@cooncolelaw.com;grg@cooncolelaw.com;abh@cooncolelaw.com
**Dennis J. Shaffer**    dshaffer@tydings.com,
scalloway@tydings.com;MYoung@tydings.com
**Robert G. Shuster**    rob@shusterlaw.com, courts@shusterlaw.com
**Howard S. Stevens**    hstevens@pascalestevens.com
**Lisa Yonka Stevens**    lstevens@milesstockbridge.com
**Andrew C. Stone**    astone@andrewstonelaw.com, r43012@notify.bestcase.com
**Brent C. Strickland**    bstrickland@whitefordlaw.com, mbaum@whitefordlaw.com;brent-
strickland-3227@ecf.pacerpro.com
**US Trustee - Greenbelt**    USTPRegion04.GB.ECF@USDOJ.GOV
**Jill C Walters**    jwalters@bakerdonelson.com
**Megan Young**    myoung@tydings.com

_/s/ Dennis J. Shaffer_
Dennis J. Shaffer

6607575.2

17