Entered: August 10th, 2026
Signed: August 7th, 2026

**SO ORDERED**

The final hearing is scheduled for August 17. 2026 at 2:00 p.m. in Courtroom 3E, USBC, 6500 Cherrywood Lane, Greenbelt, MD 20770.



LORI S. SIMPSON
U.S. BANKRUPTCY JUDGE

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **MULFORD CONSTRUCTION CO., INC.,** | **Case No. 26-13271 (LSS)** |
| **Debtor.** | |

### INTERIM ORDER: (I) AUTHORIZING AND APPROVING POST-PETITION SECURED FINANCING; (II) GRANTING SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (III) AUTHORIZING USE OF CASH COLLATERAL; (IV) MODIFYING THE AUTOMATIC STAY; AND <u>(V) SCHEDULING A FINAL HEARING</u>

Upon the *Motion for Entry of Order: (I) Authorizing and Approving Post-Petition Secured Financing, (II) Granting Security Interests and Superpriority Administrative Expense Status, (III) Authorizing Use of Cash Collateral, and (IV) Modifying the Automatic Stay* (the "<u>Motion</u>"), filed by Mulford Construction Co., Inc., debtor and debtor in possession (the "<u>Debtor</u>"), pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2) and 364(c)(3) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 4001-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "<u>Local Rules</u>"), seeking:

**Error!**

(a)     authorization for the Debtor to obtain post-petition loans, advances and other financial accommodations from Kurt Fowler ("Mr. Fowler") in accordance with the DIP Credit Agreement (as defined in the Motion)[1] and this Interim Order up to the amount of $400,000.00, secured by security interests in and liens upon all of the Post-Petition Collateral pursuant to Sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code;

(b)     authorization for the Debtor to enter into the DIP Credit Agreement, by and among the Debtor and Mr. Fowler (a copy of which is annexed hereto as **Exhibit A** and is incorporated herein); and

(c)     the grant to Mr. Fowler of superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all obligations under the DIP Credit Agreement.

It appearing that due and appropriate notice of the Motion, the relief requested therein, and the hearing on the Motion (the "Notice") having been served by the Debtor in accordance with Rule 4001(c) on: (i) the United States Trustee for the District of Maryland (the "U.S. Trustee"); (ii) the holders of the twenty (20) largest unsecured claims against the Debtor's estate (the "20 Largest Unsecured Creditors"), and (iii) those parties requesting notice in the case (collectively, the "Notice Parties").

## BACKGROUND

A.     Petition.  On March 27, 2026 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its businesses and manage its properties as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1]     Capitalized terms undefined herein shall have the meanings ascribed to them in the Motion.

**Error!**

2

B.        Jurisdiction and Venue.  The Court has jurisdiction over this proceeding and the

parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion is a

"core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M). Venue of this chapter 11

case and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.        Notice.  Under the circumstances, the Notice given by the Debtor of the Motion

and the relief granted under this Interim Order constitutes due and sufficient notice thereof and

complies with Bankruptcy Rule 4001(c).

D.        Upon the record made by the Debtor at an interim hearing on the Motion (the

"Interim Hearing"), including the Motion, and the filings and pleadings in this chapter 11 case,

and good and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.        Findings Regarding the Post-Petition Financing.

(i)        *Post-Petition Financing*. The Debtor has requested from Mr. Fowler, and

Mr. Fowler is willing to extend, certain loans, advances and other financial accommodations on

the terms and conditions set forth in this Interim Order and the DIP Credit Agreement.

(ii)       *Need for Post-Petition Financing*. The Debtor does not have sufficient

available sources of working capital, including cash collateral, to operate its business in the

ordinary course of its business without the financing requested under the Motion. The Debtor's

ability to maintain business relationships with its vendors, suppliers and customers, to pay its

employees, and to otherwise fund its operations, subject to compliance with the Budget, hereinafter

defined (subject to Permitted Variances),[2] is essential to the Debtor's continued viability as the

---

[2]        For purposes of this Interim Order, the term "Permitted Variance" shall mean, for each two-week period (each, a "Variance Testing Period"), a ten percent (10%) negative variance with respect to the operating receipts and operating disbursements set forth in the Budget on a line item and cumulative basis; provided that any positive variance

**Error!**

3

Debtor seeks to maximize the value of the assets of the estate for the benefit of all creditors of the Debtor. The ability of the Debtor to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangement with Mr. Fowler as set forth in this Interim Order and the DIP Credit Agreement is vital to the preservation and maintenance of the going concern value of the Debtor. Accordingly, the Debtor has a need to obtain the post-petition financing in order to, among other things, permit the orderly continuation of the operation of its businesses, minimize the disruption of its business operations, and preserve and maximize the value of the assets of the Debtor's bankruptcy estate (as defined under Section 541 of the Bankruptcy Code, the "Estate") in order to maximize the recovery to all creditors of the Estate.

(v)     *Good Cause*. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor, its creditors and its Estate, as its implementation will, among other things, provide the Debtor with the necessary liquidity to: (a) minimize disruption to the Debtor's businesses and on-going operations; and (b) preserve and maximize the value of the Debtor's Estate for the benefit of all the Debtor's creditors.

(vi)     *Final Hearing*. The Debtor will seek approval of the relief requested in the Motion on a final basis pursuant to a final order ("Final Order") at a final hearing ("Final Hearing").

Based upon the foregoing, and after due consideration and good cause appearing therefor,

---

may     be     carried     forward     and     credited     to     subsequent     Variance     Testing     Periods.

**Error!**

4

**IT IS HEREBY ADJUDGED, ORDERED, AND DECREED THAT:**

      **Section 1.**     **Authorization and Conditions to Financing.**

      1.1     Motion Granted. The Motion is granted on an interim basis to the extent provided in this Interim Order.

      1.2     Interim Authorization for Debtor to Use Loan Proceeds. The Debtor is hereby authorized and empowered to immediately borrow and obtain loans and to incur indebtedness on an interim basis in accordance with the Budget, and obligations owing to Mr. Fowler pursuant to the terms and conditions of this Interim Order and the DIP Credit Agreement in such amounts as may be made available to the Debtor by Mr. Fowler in accordance with the DIP Credit Agreement, this Interim Order, and the Budget (subject to the Permitted Variances). The Debtor has delivered to Mr. Fowler and the Office of the United States Trustee an 8-week cashflow forecast of receipts and disbursements, and sources and uses of the Debtor, broken down by week, including the anticipated uses of post-petition financing for such period (a "Budget"), in each case, in form and substance acceptable to Mr. Fowler.  The initial Budget is attached to this Interim Order as **Exhibit B**. Funds borrowed under the DIP Credit Agreement shall be used by the Debtor in accordance with the Budget (subject to the Permitted Variances), the DIP Credit Agreement and this Interim Order; provided, however, that no proceeds of the DIP Credit Facility may be used, directly or indirectly, to pay, satisfy, refinance, roll up, or otherwise provide consideration for any prepetition obligation of the Debtor, including any prepetition obligation owed to Kurt Fowler or any other insider, whether denominated as a loan, advance, reimbursement, fee, salary, bonus, draw, distribution, or otherwise, unless expressly authorized by further order of the Court after notice and a hearing.

**Error!**

1.3     Financing Agreement; Authorization. The Debtor is hereby authorized and directed to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the DIP Credit Agreement and this Interim Order.

1.4     Payments and Application of Payments. Subject to entry of a final order, the Debtor is authorized and directed to make all payments and transfers of Estate property to Mr. Fowler as provided, permitted and/or required under the DIP Credit Agreement and this Interim Order, which payments and transfers, subject to the terms herein, shall not be avoidable or recoverable from Mr. Fowler under Section 547, 548, 550, 553 or any other Section of the Bankruptcy Code, or any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise.  Such payments shall be applied by Mr. Fowler first to the Debtor's obligations until such obligations are paid and satisfied in full, and for the avoidance of doubt, "obligations" as used in this Interim Order and the DIP Credit Agreement shall not include any prepetition obligation, debt, advance, claim, or other liability owed to Kurt Fowler or any other insider, prepetition lender, or related party, unless expressly stated otherwise in this Interim Order.

**Section 2.     Post-petition Lien; Superpriority Administrative Claim Status**.

2.1     Post-Petition Lien.

2.1.1     Post-Petition Lien Granting. To secure the prompt payment and performance of any and all the Debtors' obligations under the DIP Credit Agreement (the "Post-Petition Obligations"), Mr. Fowler shall have and is hereby granted on an interim basis, effective as of the Petition Date, valid and perfected, security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtor's Estate may have (but subject to certain claims entitled to priority, including the Permitted Liens and Claims (defined below) as and to the

**Error!**

6

extent expressly provided below), in and upon the Debtor's post-petition assets that are not otherwise subject to valid and properly perfected pre-petition liens up to the value of the collateral subject to the applicable pre-petition liens, including but not limited to existing valid and properly perfected liens on accounts, accounts receivable, payment intangibles, contract rights, chattel paper, deposit accounts, machinery, equipment, vehicles, inventory, and proceeds thereof ("Post-Petition Collateral"), provided, however, that no lien shall attach to any prepetition collateral except to the extent expressly and unambiguously authorized in this Interim Order.

2.1.2    Lien Priority. The post-petition liens and security interests of Mr. Fowler granted under the DIP Credit Agreement and this Interim Order in the Post-Petition Collateral shall be and shall continue to be priming first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, in conjunction with Sections 363, 364 or any other Section of the Bankruptcy Code or other applicable law; provided, however, that Mr. Fowler's liens on and security interests in the Post-Petition Collateral shall be subject only to the Carve Out Expenses (as defined below) solely to the extent provided for in this Interim Order  and any replacement lien or other adequate protection expressly granted to CCG under Sections 361 and 363(e) of the Bankruptcy Code ("Permitted Liens and Claims").

2.1.3    Post-Petition Lien Perfection. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Post-Petition Collateral, or other act to validate or perfect such security interest or lien (a "Perfection Act"). Notwithstanding the foregoing, if Mr.

**Error!**

Fowler shall, in his sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, Mr. Fowler is authorized to perform such act, and the Debtor is authorized and directed to perform such act to the extent necessary or required by Mr. Fowler, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law. Mr. Fowler may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law. Should Mr. Fowler so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Interim Order.

    2.1.4. CCG Adequate Protection / Replacement Lien. To the extent the Debtor uses any cash collateral in which Commercial Credit Group, Inc. ("CCG") asserts an interest, or to the extent CCG's collateral position is diminished by the grant of any lien or use authorized by this Interim Order, CCG shall be entitled to adequate protection under Sections 361 and 363(e) of the Bankruptcy Code, including a replacement lien of the same kind, priority, and extent as existed on the Petition Date, but only to the extent of any diminution in the value of CCG's cash collateral.

    2.2 <u>Superpriority Administrative Expense</u>. For all Debtor's Post-Petition

Error!

8

Obligations, Mr. Fowler is granted, on an interim basis, an allowed superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtor, whether now in existence or hereafter incurred by the Debtor, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726 or 1114 of the Bankruptcy Code (the "Superpriority Claim"), provided, however, the Superpriority Claim shall be subject to the Permitted Liens and Claims as and to the extent expressly set forth in this Interim Order and any replacement lien or other adequate protection granted to CCG under this Interim Order or any further order of the Court.

2.3     Carve Out Expenses.

2.3.1   Carve Out Expenses. Upon the declaration by Mr. Fowler of the occurrence of an Event of Default, Mr. Fowler's claims and security interests in the Post-Petition Collateral and its Superpriority Claim shall be subject only to the right of payment of the following expenses (the "Carve Out Expenses"):

a.      statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); and

b.      fees payable to the Clerk of this Court.

2.4     Payment of Carve-Out Expenses. Prior to the occurrence of an Event of Default, the Debtor shall be permitted to pay any outstanding Carve-Out Expenses.

2.5     Use of Cash Collateral. Subject to the terms and conditions of this Interim Order and the DIP Credit Agreement, the Debtor shall be and is hereby authorized to use, until the expiration of Mr. Fowler's commitment to lend under the DIP Credit Agreement, the Cash

**Error!**

9

Collateral (as defined in Section 363 of the Bankruptcy Code) provided, however, that no cash collateral in which CCG asserts an interest may be used unless and until CCG receives adequate protection in the form set forth in this Interim Order or any further order of the Court. Nothing in this Interim Order shall impair, waive, or subordinate CCG's rights in its cash collateral except to the limited extent expressly stated herein. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its Estate outside the ordinary course of business, or any Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Credit Agreement, or any other order of the Court permitting such use.

2.6     A/R Segregation. The Debtor shall maintain records reasonably sufficient to identify prepetition accounts receivable, postpetition accounts receivable, and proceeds thereof, and shall not commingle or dispose of such funds in a manner that would impair the ability to identify or trace them.

**Section 3.     Default; Rights and Remedies; Relief from Stay.**

3.1     Events of Default. The occurrence of any of the following events shall constitute an "Event of Default" under this Interim Order:

a.     Debtor's failure to perform, in any respect, any of the terms, conditions or covenants, or its obligations, under this Interim Order; or

b.     An "Event of Default" under the DIP Credit Agreement.

3.2     Rights and Remedies Upon Event of Default. Upon the occurrence of and during the continuance of an Event of Default, upon five (5) business day's prior written notice of such occurrence and continuation, in each case given to the Debtor and its counsel and the Office of the United States Trustee, Mr. Fowler shall be entitled to seek relief from the Court (which may be on an expedited basis) to exercise any right or remedy as provided in this Interim Order

**Error!**

10

including, without limitation, declaring all obligations of the Debtor immediately due and payable, accelerating the obligations of the Debtor, ceasing to extend loans, setting off any obligations of the Debtor with Post-Petition Collateral or proceeds in Mr. Fowler's possession, and enforcing any and all rights with respect to the Post-Petition Collateral.

3.3 <u>Expiration of Commitment</u>. Upon the expiration of Debtor's authority to borrow and obtain other credit accommodations from Mr. Fowler pursuant to the terms of this Interim Order and the DIP Credit Agreement (except if such authority shall be extended with the prior written consent of Mr. Fowler, which consent shall not be implied or construed from any action, inaction or acquiescence by Mr. Fowler), unless an Event of Default set forth herein occurs sooner and the automatic stay has been lifted or modified pursuant to this Interim Order, all of the obligations of the Debtor shall immediately become due and payable.

**Section 4.        <u>Other Rights and Obligations</u>.**

4.1 <u>No Modification or Stay of This Interim Order</u>. In accordance with Section 364(e) of the Bankruptcy Code, and notwithstanding any modification, amendment or vacatur of any or all of the provisions of this Interim Order by a subsequent order of this Court or any other court, Mr. Fowler, in his capacity as DIP Lender, is entitled to the protections provided in Section 364(e) of the Bankruptcy Code, <u>provided</u>, <u>however</u>, that nothing in this Interim Order shall be construed as making a finding under Section 363(m) of the Bankruptcy Code.

4.2 <u>Power to Waive Rights; Duties to Third Parties</u>. Mr. Fowler shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order in respect of Mr. Fowler (the "<u>Lender Rights</u>") and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender

**Error!**

11

Right(s). Any waiver by Mr. Fowler of any Lender Rights shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, subject Mr. Fowler to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtor to Mr. Fowler.

4.3     Reservation of Rights. The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of Mr. Fowler to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Credit Agreement or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Post-Petition Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of the Debtor's professionals or other parties seeking compensation or reimbursement from the Estate.

4.4     Binding Effect. Subject to entry of a final order:

4.4.1     The provisions of this Interim Order and the DIP Credit Agreement, the Post-Petition Obligations, the Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of Mr. Fowler provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, subject to entry of a final order approving the DIP Credit Agreement, including without limitation any order which may be entered confirming any plan of reorganization, converting the case to any other chapter under the Bankruptcy Code, or dismissing

**Error!**

12

the case.

4.4.2    Any order dismissing the case under Section 1112 of the Bankruptcy Code or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that: (a) the Superpriority Claim and Mr. Fowler's liens on and security interests in the Post-Petition Collateral shall continue in full force and effect notwithstanding such dismissal until the obligations of the Debtor are indefeasibly paid and satisfied in full; and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim and liens in the Post-Petition Collateral.

4.4.3    This Interim Order shall be binding upon the Debtor, all parties in interest in the case and their respective successors and assigns, including any trustee or other fiduciary appointed in the case or any subsequently converted bankruptcy case(s) of the Debtor. This Interim Order shall also inure to the benefit of Mr. Fowler, the Debtor and their respective successors and assigns.

4.5    Borrowings. Within forty-eight hours of any borrowings under the DIP Credit Agreement, the Debtor shall file with the Court a notice of such borrowing and the amount drawn down by the Debtor.

4.6    Term; Termination. Notwithstanding any provision of this Interim Order to the contrary, the term of the financing arrangements among the Debtor and Mr. Fowler authorized by this Interim Order may be terminated by Mr. Fowler upon the occurrence of an Event of Default.

4.7    Limited Effect. In the event of a conflict between the terms and provisions of the DIP Credit Agreement and this Interim Order, the terms and provisions of this Interim Order shall govern, interpreted as most consistent with the terms and provisions of the DIP Credit Agreement.

**Error!**

4.8     Adequate Notice. The Debtor shall promptly mail copies of this Interim Order to any known party affected by the terms of this Interim Order and any other party requesting notice after the entry of this Interim Order. Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be actually received no later than seven (7) days prior to the Final Hearing by the following: (a) counsel to the Debtor, Tydings & Rosenberg LLP, One East Pratt Street, Suite 901, Baltimore, MD 21202, Attn:, Richard L. Costella, and Dennis J. Shaffer; (b) Kurt Fowler as debtor in possession lender, 171 Skipjack Road, Prince Frederick, Maryland, 20678; and (c) the Office of the United States Trustee, 6305 Ivy Lane, Greenbelt, Maryland 20770, Attn: Jeanette Rice (jeanette.rice@usdoj.gov). The Court shall conduct a Final Hearing on the Motion on the date provided by the Court as may be referenced on the first page of this Interim Order and/or as may be provided by separate notice.

4.9     Retention of Jurisdiction. This Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Interim Order.

4.10     Interpretation and Conformity. In the event of any inconsistency among the Motion, the DIP Credit Agreement, the Security Agreement, the Budget, and this Interim Order, this Interim Order shall control. No provision of the Motion, the DIP Credit Agreement, the Security Agreement, or any related document shall be construed to expand the lien grant, payment rights, or cash collateral rights beyond the express terms of this Interim Order. No later "conforming" proposed order may enlarge the relief granted herein.

cc:     Richard L. Costella
Dennis J. Shaffer
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland  21202

**Error!**

Office of the United States Trustee
101 West Lombard Street, Suite 2625
Baltimore, Maryland 21201

Parties receiving notice by CM/ECF

**\*\*END OF ORDER\*\***

**Error!**