**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| In re: | * | |
| MULFORD CONSTRUCTION CO., INC., | * | Case No.: 26-13271 |
| Debtor. | * | (Chapter 11) |
| * * * * * * * * * * | * * * * * * * * * * * * * | |
| COMMERCIAL CREDIT GROUP, INC., | * | |
| Movant, | * | |
| v. | * | |
| MULFORD CONSTRUCTION CO., INC. | * | |
| Respondent. | * | |
| * * * * * * * * * * | * * * * * * * * * * * * * | |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF 11 U.S.C § 362(a) AND MEMORANDUM IN SUPPORT THEREOF**

Commercial Credit Group, Inc. ("CCG"), by counsel, hereby files its Motion for Relief from the Automatic Stay of 11 U.S.C. § 362(a) (the "Motion"), and moves, pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(3) and Federal Rules of Bankruptcy Procedure 4001 and 9014, for the entry of an order granting CCG relief from the automatic stay in this case so that CCG can immediately exercise and enforce its rights and remedies against the Chesapeake Equipment (as defined below) owned by non-debtor, Chesapeake Environmental Materials LLC ("Chesapeake") and purportedly leased by Debtor, Mulford Construction Co., Inc. (the "Debtor"), and in support hereof states as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

1

Venue of Debtor's chapter 11 case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

3.      The statutory predicates for the relief requested herein are sections 362(d)(1) and (d)(3) of the United States Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.

## **BACKGROUND**

4.      The Debtor filed its Petition for relief under Chapter 11 on March 27, 2026 and is operating its business and managing its property as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this Chapter 11 case, and no committee has been appointed or designated

5.      Chesapeake is also indebted to CCG under seven equipment loans. After CCG exercised its remedies to start repossessing equipment owned by Chesapeake as a result of Chesapeake's ongoing default and broken promises of payment, the Debtor asserted at its meeting of creditors that the Debtor leases Chesapeake's equipment for use in the Debtor's operations despite the fact that the Debtor's Schedule G did not list any such leases.

6.      Debtor did not provide copies of any leases at that time but indicated that it would promptly amend Schedule G to list the leases. No such amendment has been filed as of the date of this Motion. Debtor instead waited until CCG had picked up most of the Chesapeake equipment to provide copies of the leases and to assert that CCG's efforts violated the automatic stay.

7.      While CCG reserves the right to challenge the existence of the alleged leases, this motion seeks adequate protection to protect it against loss of value of the Chesapeake Equipment while CCG is precluded by the automatic stay from exercising its remedies with respect thereto.

8.    Chesapeake is currently indebted to CCG under and in connection with seven loans that enabled Chesapeake to acquire construction equipment (the "Chesapeake Equipment"), as follows:

a.  **Loan 1**

9.    On February 15, 2022, CCG extended a loan to Chesapeake evidenced by a $130,062.00 Negotiable Promissory Note and Security Agreement, as amended by an Amendment dated May 16, 2025 (collectively, the "Loan 1 Note"), executed and delivered by Chesapeake to the order of CCG. True and accurate copies of the documents comprising the Loan 1 Note are attached hereto as **Exhibit 1.**

10.    As security for the payment and performance of the Loan 1 Note and all other present and future obligations owed to CCG, Chesapeake, among other things, granted CCG a secured interest in the equipment listed in paragraph 26 thereof (the "Loan 1 Equipment")[1] together with a blanket security interest in all of Chesapeake's personal property. CCG perfected its security interest in the Loan 1 Equipment by filing a UCC-1 Financing Statement with the Maryland Department of Assessments and Taxation (the "Loan 1 UCC-1") and by recording a lien on the title to the Loan 1 Equipment with the Maryland Department of Transportation Motor Vehicle Administration. True and accurate copies of the Loan 1 UCC-1 and the title to the Loan 1 Equipment is attached hereto as **Exhibit 2.** Accordingly, CCG has a properly perfected first-priority security interest in the Loan 1 Equipment.

---

[1] For brevity, each piece of Chesapeake Equipment is listed in ¶___, below. All references herein to Equipment and other Collateral as "Loan 1", "Loan 2", "Loan 3", etc.. Equipment and Collateral is merely for ease of reference. All of the Loans are cross-collateralized.

3

11.     The Loan 1 Note, Loan 1 UCC-1, and all other loan and security documents executed in connection therewith are collectively referred to as the "Loan 1 Documents."

**b. Loan 2**

12.     On July 27, 2022, CCG extended a loan to Chesapeake evidenced by a Negotiable Promissory Note and Security Agreement in the face amount of $1,305,080.00, as amended by an Amendment dated May 16, 2025 (collectively, the "Loan 2 Note"), executed and delivered by Chesapeake to the order of CCG. True and accurate copies of the documents comprising the Loan 2 Note are attached hereto as **Exhibit 3.**

13.     As security for the payment and performance of the Loan 2 Note and all other present and future Obligations owed to CCG, Chesapeake, among other things, granted CCG a security interest in the equipment described in paragraph 26 of the Loan 2 Note (the "Loan 2 Equipment") together with a security interest in all of Chesapeake's other personal property (collectively the "Loan 2 Collateral"). CCG perfected its security interest in the Loan 2 Equipment and other Collateral by filing a UCC-1 Financing Statement with the Maryland Department of Assessments and Taxation (the "Loan 2 UCC-1") and by recording a lien against the titled Loan 2 Collateral with the Maryland Department of Transportation Motor Vehicle Administration. True and accurate copies of the Loan 2 UCC-1 and the title to the Loan 2 Equipment are attached hereto as **Exhibit 4.** Accordingly, CCG has a properly perfected first-priority security interest in the collateral pledged under Loan 2.

14.     The Loan 2 Note, Loan 2 UCC-1, and all other loan and security documents executed in connection therewith are collectively referred to as the "Loan 2 Documents."

4

**c. Loan 3**

15.     On November 23, 2022, CCG extended a loan to Chesapeake evidenced by a Negotiable Promissory Note and Security Agreement in the face amount of $277,980.00, as amended by an Amendment dated May 16, 2025 (collectively, the "Loan 3 Note"), executed and delivered by Chesapeake to the order of CCG. True and accurate copies of the documents comprising the Loan 3 Note are attached hereto as **Exhibit 5.**

16.     As security for the payment and performance of the Loan 3 Note and all other obligations to CCG, Chesapeake, among other things, granted CCG a secured interest in the equipment listed in paragraph 26 thereof (the "Loan 3 Equipment") together with all of Chesapeake's other personal property (collectively the "Loan 3 Collateral"):

17.     CCG perfected its security interest in the Loan 3 Collateral by filing a UCC-1 Financing Statement with the Maryland Department of Assessments and Taxation (the "Loan 3 UCC-1") and by recording a lien on the title to the titled Loan 3 Collateral with the Maryland Department of Transportation Motor Vehicle Administration. True and accurate copies of the Loan 3 UCC-1 and titles are attached hereto as **Exhibit 6.** Accordingly, CCG has a properly perfected first-priority security interest in the Loan 3 Collateral.

18.     The Loan 3 Note, Loan 3 UCC-1, and all other loan and security documents executed in connection therewith are collectively referred to as the "Loan 3 Documents."

**d. Loan 4**

19.     On March 7, 2023, , CCG extended a loan to Chesapeake evidenced by a Negotiable Promissory Note and Security Agreement in the face amount of $996,460.00, as amended by an Amendment dated May 16, 2025 (collectively, the "Loan 4 Note"), executed and delivered by

Chesapeake to the order of CCG. True and accurate copies of the documents comprising the Loan 4 Note are attached hereto as **Exhibit 7.**

20. As security for the payment and performance of the Loan 4 Note and all other obligations to CCG, Chesapeake, among other things, granted CCG a secured interest in the equipment described in paragraph 26 thereof (the "Loan 4 Equipment") together with a security interest in all of Chesapeake's other personal property (collectively, the "Loan 4 Collateral")

21. CCG perfected its security interest in the Loan 4 Collateral by filing a UCC-1 Financing Statement with the Maryland Department of Assessments and Taxation (the "Loan 4 UCC-1") and by recording liens against the titles of the titled Loan 4 Collateral with the Maryland Department of Transportation Motor Vehicle Administration. True and accurate copies of the Loan 4 UCC-1 and the titles to the titled equipment are attached hereto as **Exhibit 8.** Accordingly, CCG has a properly perfected first-priority security interest in the Loan 4 Collateral.

22. The Loan 4 Note, Loan 4 UCC-1, and all other loan and security documents executed in connection therewith are collectively referred to as the "Loan 4 Documents."

e. **Loan 5**

23. On April 13, 2023, CCG extended a loan to Chesapeake evidenced by a Negotiable Promissory Note and Security Agreement in the face amount of $747,061.00, as amended by an Amendment dated May 16, 2025 (collectively, the "Loan 5 Note"), executed and delivered by Chesapeake to the order of CCG. True and accurate copies of the documents comprising the Loan 5 Note are attached hereto as **Exhibit 9.**

24. As security for the payment and performance of the Loan 5 Note and all other obligations to CCG, Chesapeake, among other things, granted CCG a secured interest in the

equipment listed in paragraph 26 thereof (the "Loan 5 Equipment") together with a security interest in all of Chesapeake's other personal property (collectively the "Loan 5 Collateral").

25.     CCG perfected its security interest in the Loan 5 Collateral by filing a UCC-1 Financing Statement with the Maryland Department of Assessments and Taxation (the "Loan 5 UCC-1") and by recording liens against the titles of the titled Loan 5 Collateral with the Maryland Department of Transportation Motor Vehicle Administration. True and accurate copies of the Loan 5 UCC-1 and the titles to the titled equipment[2] are attached hereto as **Exhibit 10.** Accordingly, CCG has a properly perfected first-priority security interest in the Loan 5 Collateral.

26.     The Loan 5 Note, Loan 5 UCC-1, and all other loan and security documents executed in connection therewith are collectively referred to as the "Loan 5 Documents."

**f.   Loan 6**

27.     On December 24, 2024, CCG extended a loan to Chesapeake evidenced by a Negotiable Promissory Note and Security Agreement in the face amount of $1,495,248.00, as amended by an Amendment dated May 16, 2025 (collectively, the "Loan 6 Note"), executed and delivered by Chesapeake to the order of CCG. True and accurate copies of the documents comprising the Loan 6 Note are attached hereto as **Exhibit 11.**

28.     As security for the payment and performance of the Loan 6 Note and all other obligations to CCG, Chesapeake, among other things, granted CCG a secured interest in the equipment listed in paragraph 26 thereof (the "Loan 6 Equipment") together with a security interest in all of Chesapeake's other personal property (collectively the "Loan 6 Collateral"):

---

[2] CCG subsequently released the 2023 Kenworth listed in paragraph 26 of Note 5. CCG has therefore attached only the title to the 2024 Kenworth which remains subject to CCG's liens.

29.     CCG perfected its security interest in the Loan 6 Collateral by filing a UCC-1 Financing Statement with the Maryland Department of Assessments and Taxation (the "Loan 6 UCC-1"). A true and correct copy of the Loan 6 UCC-1 is attached hereto as **Exhibit 12.** Accordingly, CCG has a properly perfected first-priority security interest in the Loan 6 Collateral.

30.     The Loan 6 Note, Loan 6 UCC-1, and all other loan and security documents executed in connection therewith are collectively referred to as the "Loan 6 Documents."

### g. **Loan 7**

31.     On December 24, 2024, CCG extended a loan to Chesapeake evidenced by a Negotiable Promissory Note and Security Agreement in the face amount of $266,070.00, as amended by an Amendment dated May 16, 2025 (collectively, the "Loan 7 Note"), executed and delivered by Chesapeake to the order of CCG. True and accurate copies of the documents comprising the Loan 7 Note are attached hereto as **Exhibit 13.**

32.     As security for the payment and performance of the Loan 7 Note and all other obligations to CCG, Chesapeake, among other things, granted CCG a security interest in the equipment listed in paragraph 26 thereof (the "Loan 7 Equipment") and in all of Chesapeake's other personal property (the "Loan 7 Collateral"):

33.     CCG perfected its security interest in the Loan 7 Collateral by filing a UCC-1 Financing Statement with the Maryland Department of Assessments and Taxation (the "Loan 7 UCC-1") and by recording liens against the titles of the titled Loan 7 Collateral with the Maryland Department of Transportation Motor Vehicle Administration, as applicable. True and correct copies of the Loan 7 UCC-1 and the titles to the titled equipment are attached hereto as **Exhibit 14.** Accordingly, CCG has a properly perfected first-priority security interest in the Loan 7 Collateral.

34. The Loan 7 Note, Loan 7 UCC-1, and all other loan and security documents executed in connection therewith are collectively referred to as the "Loan 7 Documents."

35. The Loan 1 Documents, Loan 2 Documents, Loan 3 Documents, Loan 4 Documents, Loan 5 Documents, Loan 6 Documents, and Loan 7 Documents, shall be referred to collectively as the "Chesapeake Loan Documents." The Loan 1 Equipment, Loan 2 Equipment, Loan 3 Equipment, Loan 4 Equipment, Loan 5 Equipment, Loan 6 Equipment, and the Loan 7 Equipment, shall be referred to collectively as the "Chesapeake Equipment." All Loans are cross-collateralized.

36. The Chesapeake Equipment is comprised of the following assets:

| Year | Make and Model | VIN or Ser. No. |
|---|---|---|
| 2022 | Talbert 55CC 55 Ton Lowboy Trailer with Converter Dolly | 40FSK5334N1041879 |
| 2022 | Volvo A30G Articulated Hauler | 752750 |
| 2022 | Volvo A30G Articulated Hauler | 752766 |
| 2023 | Peterbilt 537 Cab & Chassis w/ STI 2460 Eagle Pro II Crane Body SN 71039-5239 & Tiger 1069 11,000 lb Crane SN 1185-69 | 2NPMHJ7X3PM870477 |
| 2023 | Western Star 47X Roll-off Truck | 5KKHBPDV1PLUH4814 |
| 2024 | Kenworth T880 Truck with Roll Off Galbreath 60,000 lbs hoist SN:  8277 | 1NKZLP0X6RJ339713 |
| 2019 | Peterbilt 389 Tri-Axle Truck with J&J Dump Body SN T524 537 | 1NPXX4EX8KD616265 |
| 2021 | John Deere 750L Crawler Dozer | 1T0750LXAMF394356 |
| 2021 | John Deere 750L Crawler Dozer | 1T0750LXCMF391639 |
| 2020 | Volvo A30G Articulated Hauler | 752024 |
| 2020 | Volvo A30G Articulated Hauler | 752013 |
| 2018 | Hitachi 350LC-6  Excavator | 1FFDDR70PKF940777 |
| 2021 | Peterbilt 337 Tri-Axle Truck with Enclosed Lube Body System SN 5658 | 2NP2HJ7X4MM732479 |
| 2019 | Volvo A30G Articulated Hauler | 742518 |
| 2019 | Volvo A30G Articulated Hauler | 742531 |

37. As of June 4, 2026, Chesapeake owed CCG the following amounts under the

Chesapeake Loan Documents, exclusive of CCG's attorneys' fees: [3]

| Note | Principal | Interest | Late/NSF Fees | Balance | Daily Int. |
|---|---|---|---|---|---|
| Note 1 | 23,194.34 | 448.91 | 100.90 | 23,744.15 | 11.60 |
| Note 2 | 413,317.05 | 17,356.54 | 4,164.60 | 434,838.19 | 206.66 |
| Note 3 | 93,492.31 | 2,956.86 | 503.30 | 96,952.47 | 46.75 |
| Note 4 | 160,161.93 | 4,791.56 | 1,363.60 | 166,317.09 | 80.08 |
| Note 5 | 149,848.49 | 2,717.69 | - | 152,566.18 | 74.92 |
| Note 6 | 1,032,775.61 | 57,148.83 | 11,630.25 | 1,101,554.69 | 516.39 |
| Note 7 | 178,101.06 | 8,015.51 | 1,250.25 | 187,366.82 | 89.05 |
| **TOTAL** | **2,050,890.79** | **93,435.90** | **19,012.90** | **2,163,339.59** | **1,025.45** |

Interest is accruing on the unpaid amounts at the rate of $1,025.45 per day.

38.    On April 13, 2023, the Debtor executed and delivered to CCG a Secured Guaranty of payment and performance of all of Chesapeake's present and future obligations to CCG, granting CCG a security interest in all of the Debtor's personal property to secure its own obligations under the Secured Guaranty, a true and correct copy of which is attached as **Exhibit 15** hereto. Plaintiff perfected its interest in the Debtor's personal property by filing a UCC-1 Financing Statement, a true copy of which is attached as **Exhibit 16**, with the Maryland Department of Assessments and Taxation.

39.    CCG is entitled under the terms of the Chesapeake Notes and the Debtor's Guaranty thereof to recover its attorneys' fees in addition to the amounts set forth above.

40.    The Chesapeake Loans are in default due to Chesapeake's failure to make the payments due for February 2026 and all subsequent months under Loans 2 and 6, and the failure to make any payments on the other Loans since May 2026.

41.    The Debtor is using the Chesapeake Equipment post-petition in the ordinary course

---

[3] This amount does not include attorneys' fees or other charges which CCG is entitled to collect under the Chesapeake Loan Documents, the Debtor's unconditional Guaranty thereof, and 11 U.S.C. §506.

10

of its business but has failed to provide adequate protection for CCG's interest therein.

42.     The Collateral is depreciating property that is subject to ordinary wear and tear, market fluctuation, and deterioration from use, and any continued delay in enforcement will further erode CCG's position. Additionally, Kurt Fowler advised CCG in May 2026 that the 2019 Peterbilt 389 (VIN 1NPXX4EX8KD616265) was in a repair shop with an unpaid repair bill. CCG does not know the shop's identity or current status of that unit.

43.     CCG's interest in the Chesapeake Collateral is not adequately protected and cause exists for relief from the automatic stay under 11 U.S.C. § 362(d)(1).

## RELIEF REQUESTED

44.     By this Motion, CCG requests that this Court enter an Order terminating the automatic stay imposed by section 362(a) of the Bankruptcy Code in the Debtor's bankruptcy case to permit CCG to immediately exercise and enforce any and all rights and remedies that CCG has under or in connection with the Chesapeake Loan Documents and applicable state law with respect to the Chesapeake Collateral, including without limitation, repossessing, collecting, selling, foreclosing upon, or otherwise enforcing its rights that Collateral.

## BASIS FOR RELIEF

45.     Pursuant to Sections 362(d)(1) of the Bankruptcy Code, CCG should be granted relief from the automatic stay to exercise its rights and remedies as a secured creditor against the Chesapeake Collateral because CCG's interest is not being adequately protected.

I.      **Relief From The Automatic Stay Is Warranted Under Bankruptcy Code Section 362(d)(1) Because "Cause" Exists, Including On The Grounds That CCG's Interest In The Collateral Is Not Being Adequately Protected.**

46.     Pursuant to Bankruptcy Code section 362(d), ". . . the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying

11

or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

47.     The Bankruptcy Code does not define "cause" for section 362(d) purposes, leaving bankruptcy courts to consider what constitutes cause based on the totality of the circumstances in each particular case. *Claughton v. Mixson*, 33 F.3d 4 (4th Cir. 1994).

48.     In this case, the Debtor bears the burden of proving that CCG's interest in the Chesapeake Collateral is being adequately protected. 11 U.S.C. § 362(g)(2).

49.     The Debtor is not providing adequate protection of CCG's interest in the Chesapeake Collateral in this case. Lack of adequate protection of a creditor's interest is grounds to lift the automatic stay. *In re ASI Activation*, 934 F.2d 1315 (4th Cir. 1991), and a creditor lacks adequate protection if the collateral is depreciating during the pendency of the automatic stay. *United Sav. Ass'n. v. Timbers of Inwood Forest Assoc's.*, 484 U.S. 365, 370, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988); §361(1)(methods of providing adequate protection to an entity with interest in property includes "cash payments to the extent the stay under section 362, [or] use … under section 363 … results in a decrease of such entity's interest in such property"). A court may also lift the stay to prevent irreparable damage to the property. *In re Mullins*, 877 F.2d 60 (4th Cir. 1989).

50.     Here, cause exists because the Chesapeake Collateral is depreciating, the Debtor has not provided adequate protection, and CCG's position continues to deteriorate through use and time. Any failure to repair the 2019 Peterbilt 389, recently reported to be in repair shop, or to pay for repairs made and any storage charges will further depreciate the value of that unit.

51.     Further, the Debtor has no apparent ability to make any payments to CCG. Chesapeake is in default under the Loans for its failure to make the payment due, and interest continues to accrue at $30,763.36 per month.

12

52. Meanwhile, the Debtor has sought post-petition financing from Kurt Fowler due to inadequate operating capital, Doc. 325, and Chesapeake has taken no action to require that Mulford make payments under the purported equipment leases despite its clear right to do so under §365(d)(5).

53. CCG's interest in the Chesapeake Equipment must be adequately protected from any diminution in value while CCG is prevented by the stay from enforcing its rights against that Equipment. The fact that Chesapeake owns the Chesapeake Equipment is irrelevant to the need for the Debtor to pay CCG adequate protection while the Debtor has possession of the equipment and while the automatic stay in the Debtor's case is preventing CCG from exercising its rights despite Chesapeake not paying its own obligations to CCG.

54. Alternatively, the Court could order that the stay will remain in effect for so long as Chesapeake is making the payment to CCG when due under the Chesapeake Notes.

55. Therefore, this Court should grant CCG relief from the automatic stay under Section 362(d)(1) of the Bankruptcy Code because CCG's interest in the Collateral as a secured creditor is not being adequately protected

56. CCG therefore respectfully requests that the Court grant relief from the automatic stay under 11 U.S.C. § 362(d)(1).

## RULE 4001(A)(3)

57. Given the need to immediately preserve Movant's rights in the Collateral, Movant requests relief from the fourteen (14) day stay of any order granting the relief requested in this Motion pursuant to Bankruptcy Rule 4001(a)(3), and requests that any order granting the relief requested in this Motion be effective immediately upon entry thereof.

## NOTICE

13

58.    In accordance with Bankruptcy Rule 4001(a), notice of this Motion has been given to the Debtor, Debtor's counsel, any committee counsel, the United States Trustee, and all parties asserting an interest in the Collateral and/or appearing on the service list in this case.

WHEREFORE, CCG respectfully requests that this Court enter an Order:

(a) granting this Motion and all relief requested by CCG herein;

(b) terminating the automatic stay imposed by 11 U.S.C. § 362(a) in the Debtor's bankruptcy case to permit CCG to immediately exercise and enforce all of its rights and remedies against the Chesapeake Equipment under the Chesapeake Notes and applicable state law, including, without limitation, repossessing, selling, foreclosing upon, liquidating, and otherwise enforcing CCG's rights against the Chesapeake Equipment;

(c) directing that the fourteen (14) day stay of Bankruptcy Rule 4001(a)(3) shall not apply to any order granting the relief requested in this Motion; and

(d) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Jessica L. Duvall*
Stanford G. Gann, Jr., Federal Bar No. 07680
Jessica L. Duvall, Federal Bar No. 21241
LEVIN GANN PA
1 West Pennsylvania Avenue, Suite 900
Towson, Maryland 21204
(410) 321-4666 – Direct Dial
(833) 801-1118 – facsimile
sgannjr@levingann.com
jduvall@levingann.com

*Attorneys for Commercial Credit Group Inc.*

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 13, 2026, a copy of the foregoing Motion was served by mailing a copy thereof by electronic mail or first-class, postage prepaid, upon the following parties:

Ally Bank c/o AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

AmeriCredit Financial Services, Inc.
dba GM Financial
PO Box 183853
Arlington, TX 76096

Lewis I. Askew
Tiber Hudson LLC
601 Pennsylvania Avenue, NW
Suite 900
Washington, DC 20004

Atlas Acquisitions LLC
492C Cedar Lane, Ste 442
Attn: Avi Schild
Teaneck, NJ 07666

E. Andrew Burcher
Walsh, Colucci Lubeley & Walsh, P.C.
4310 Prince William Parkway, Suite 300
Woodbridge, VA 22192

Shawn Doil, Esquire
Verill Dana, LLP
1 Portland Square, Floor 10
Portland, ME 04101

John Giffune
Verrill Dana, LLP
1 Portland Square, Floor 10
Portland, ME 04101

Nathaniel R Hull, Esquire
1 Portland Square, Floor 10
Portland, ME 04101

Patricia McArdle
3811 Turtle Creek Blvd, Suite 1725
Dallas, TX 75219

Brandy M. Rapp
Whiteford, Taylor, & Preston, L.L.P.
10 S. Jefferson Street, Suite 110
Roanoke, VA 24011

Nicholas Smargiassi
Saul Ewing LLP
1201 N. Market Street, Suite 230
Wilmington, DE 19801

Jill C. Waters
Baker, Donelson,Bearman, Caldwell & Berk
2235 Gatway Access Point, Suite 220
Raleigh, NC 27607

15

I further certify that on August 13, 2026, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the foregoing Motion will be served electronically by the Court's CM/ECF system on the following parties:

- **Nathan D. Adler**   nda@nqgrg.com, terry@nqgrg.com
- **Brian E. Barkley**   bbarkley@barkenlaw.com
- **Jodie E. Bekman**   jbekman@gfrlaw.com, dferguson@gfrlaw.com
- **Garrett E. Brierley**   brierley@councilbaradel.com
- **Eugene A Burcher**   eaburcher@thelandlawyers.com
- **Aaron L. Casagrande**   Aaron.casagrande@Icemiller.com
- **Richard L. Costella**   rcostella@tydings.com, myoung@tydings.com;pcoolbaugh@tydings.com
- **Andrea Campbell Davison**   ADavison@beankinney.com, dadragna@beankinney.com
- **Marguerite Lee DeVoll**   mdevoll@watttieder.com, mlindau@watttieder.com
- **Emily Devan**   edevan@milesstockbridge.com
- **Jessica Lynne Duvall**   jduvall@levingann.com, ltress@levingann.com
- **Mark Edelson**   medelson@silvermanthompson.com, dlawal@mdattorney.com
- **John Tucker Farnum**   jfarnum@milesstockbridge.com, jfarnumecfnotices@gmail.com
- **Justin Philip Fasano**   jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com;tmackey@mhlawyers.com;mevans@mhlawyers.com;cmartin@mhlawyers.com;Fasano.JustinR92003@notify.bestcase.com
- **Ashley N Fellona**   ashley.fellona@saul.com, janice.mast@saul.com
- **John David Folds**   dfolds@bakerdonelson.com, sparson@bakerdonelson.com
- **James Durling Fullerton**   jfullerton@fullertonlaw.com
- **Stanford G. Gann**   sgannjr@levingann.com
- **Stephen B. Gerald**   sgerald@tydings.com
- **Shawn Haught**   shaught@wardcolaw.com
- **Alan C. Hochheiser**   ahochheiser@mauricewutscher.com
- **Kevin G. Hroblak**   kevin.hroblak@icemiller.com, madelin.hill@icemiller.com
- **Darnell E. Ingram**   darnell@deingram.com
- **Michael Kalish**   mkalish@thelandlawyers.com, eaburcher@thelandlawyers.com;mandrews@thelandlawyers.com
- **Shanna Kaminski**   skaminski@kaminskilawpllc.com
- **Emmit F Kellar**   ekellar@bakerdonelson.com, jbedell@bakerdonelson.com
- **Nicole C. Kenworthy**   bdept@mrrlaw.net
- **Michael J Klima**   Jklima@kpdlawgroup.com

16

- **Jennifer Larkin Kneeland**   jkneeland@watttieder.com, mlindau@watttieder.com
- **Michael J. Levin**   mlevin@silvermanthompson.com
- **James McNally**   jmcnally@cohenseglias.com, ddefoor@cohenseglias.com
- **Pierce C Murphy**   pmurphy@mdattorney.com, efiling@silvermanthompson.com
- **Andrew Justin Narod**   anarod@bradley.com, tlynch@bradley.com
- **Craig Palik**   cpalik@mhlawyers.com, cpalik@ecf.inforuptcy.com;Palik.CraigR92003@notify.bestcase.com;mevans@mhlawyers.com;cmartin@mhlawyers.com
- **Brandy Michelle Rapp**   brapp@whitefordlaw.com
- **L. Jeanette Rice**   Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- **Eli Robbins**   erobbins@harrisonlawgroup.com, swilson@harrisonlawgroup.com
- **Scott R. Robinson**   scottr@hrdlawyers.com, darcyf@hrdlawyers.com
- **Joel Ruderman**   jruderman@watttieder.com
- **Marc E. Shach**   mes@cooncolelaw.com, mes@cooncolelaw.com;ccc@cooncolelaw.com;dhc@cooncolelaw.com;zjac@cooncolelaw.com;cmh@cooncolelaw.com;grg@cooncolelaw.com;abh@cooncolelaw.com
- **Dennis J. Shaffer**   dshaffer@tydings.com, scalloway@tydings.com;MYoung@tydings.com
- **Robert G. Shuster**   rob@shusterlaw.com, courts@shusterlaw.com
- **Howard S. Stevens**   hstevens@pascalestevens.com
- **Lisa Yonka Stevens**   lstevens@milesstockbridge.com
- **Andrew C. Stone**   astone@andrewstonelaw.com, r43012@notify.bestcase.com
- **Brent C. Strickland**   bstrickland@whitefordlaw.com, mbaum@whitefordlaw.com;brent-strickland-3227@ecf.pacerpro.com
- **US Trustee - Greenbelt**   USTPRegion04.GB.ECF@USDOJ.GOV
- **Jill C Walters**   jwalters@bakerdonelson.com
- **Megan Young**   myoung@tydings.com

*/s/ Jessica L. Duvall*
Jessica L. Duvall