# Exhibit 15

# SECURED GUARANTY

**To: Commercial Credit Group Inc. ("Creditor")**

**Re: <u>Chesapeake Environmental Materials, LLC</u>  ("Subject")**

1.    For valuable consideration, each of the undersigned ("Guarantor"), jointly and severally, unconditionally guarantees and agrees to be unconditionally liable for the full, complete and prompt payment and performance (and not merely a guaranty of collection) of any and all present and future Obligations (as hereinafter defined) of Subject to Creditor or any affiliate of Commercial Credit, Inc., whether joint or several, direct or indirect, absolute or contingent, matured or un-matured, secured or unsecured; without reduction by reason of any claim, defense, setoff, counterclaim or recoupment. This is a continuing guaranty which shall remain in full force and effect, regardless of the death or dissolution of Guarantor, until full and indefeasible payment and performance of all Obligations, and thereafter until Creditor's actual receipt of a written notice of termination of Guarantor's obligations hereunder as set forth in paragraph 4 below (any such notice of termination must be sent by certified mail and shall be effective only as to transactions arising, incurred or created after Creditor's receipt thereof).

2.    The term "Obligations" as used herein shall mean and include: (a) any and all loans, equipment leases, conditional sale contracts, advances, payments, extensions of credit, endorsements, benefits and financial accommodations, previously, now or hereafter made, granted or extended by Creditor or any affiliate of Commercial Credit, Inc., on account of Subject or which Creditor has or will become obligated to make, grant or extend to or for the account of Subject; and (b) any and all interest, commissions, obligations, liabilities, indebtedness, charges, late charges, prepayment premiums, attorneys fees and costs and expenses hereto and/or hereafter chargeable against Subject by Creditor or owing by Subject to Creditor or upon which Subject may be and/or has become liable as endorser or guarantor; and (c) all obligations and/or indebtedness of any and every kind of Subject to Creditor whether direct or indirect, whether contingent or absolute, whether matured or un-matured and whether now or in the future arising, existing, incurred, contracted or owing to Creditor or acquired by Creditor by one or more assignments, transfers or otherwise, including but not limited to amounts due upon any notes or other obligations, given to or received by Creditor directly from Subject or by way of assignment from any one or more third parties and whether or not presently contemplated by the parties; and (d) any and all renewals, amendments, rewrites, increases, modifications or extensions of any of the foregoing.

3.    To secure the prompt payment, performance and fulfillment of any and all Obligations (as hereinabove defined) of each Guarantor, each Guarantor hereby assigns, transfers, conveys, pledges, mortgages and grants to Creditor and all affiliates of Commercial Credit, Inc. a security interest and lien in any and all of such Guarantor's accounts, accounts receivable, chattel paper, contract rights, documents, equipment, fixtures, general intangibles, goods, instruments, inventory, securities, deposit accounts, investment property and all other property of whatever nature and kind, wherever located, in which such Guarantor now or hereafter has any right or interest and in any and all attachments, accessories, tooling, substitutions, replacements, replacement parts, additions , software and software upgrades and all cash and non-cash proceeds (including rental proceeds, insurance proceeds, accounts and chattel paper arising out of or related to the sale, use, rental or other disposition thereof) of and to all of the foregoing (collectively, whether owned by one or more Guarantors, called the "Collateral"). Each Guarantor grants Creditor and all affiliates of Commercial Credit, Inc. a security interest in their respective items of Collateral to secure the Obligations.  To secure all the Obligations under this Secured Guaranty, each Guarantor authorizes Creditor to file one or more financing statements and/or a reproduction hereof as a financing statement, from time to time against each Guarantor, or any combinations thereof, as Creditor deems in its sole discretion appropriate, in any jurisdiction (and each Guarantor shall execute any financing statement or financing change statement), and each Guarantor hereby irrevocably appoints Creditor as the true and lawful Attorney-in-Fact of such Guarantor, coupled with an interest, with full power in such Guarantor's name, place and stead to execute financing statements on Guarantor's behalf and to do any and all other acts on Guarantor's behalf necessary or helpful to perfect the security interest in the Collateral granted herein pursuant to the Uniform Commercial Code or other applicable law.

4.    Each of the Guarantors hereunder warrant and agree that Guarantors' liability to Creditor hereunder is direct and unconditional and may be enforced against Guarantors without Creditor's prior resort to any other right, remedy or security shall continue notwithstanding any repossession or other disposition of security regardless of whether same may be an election of remedies against Subject and without Creditor first having to proceed against Subject or to liquidate any Obligations of Subject or any property, collateral or security ("Security") securing Subject's Obligations, and irrespective of any invalidity, illegality, illegitimacy or unenforceability of any such Obligation or the insufficiency, invalidity or unenforceability of any Security of any such Obligations, and that the restructure of any Obligations or limitation of liability as to any other party liable for the Obligations pursuant to any bankruptcy or insolvency proceedings shall not inure to the benefit of Guarantors, each of whom shall remain liable for the Obligations as existing immediately prior to such proceeding and for all amounts accruing thereafter pursuant to the instrument evidencing such Obligations. Each of the Guarantors hereunder also warrant and agree, (a) to pay on demand all sums due and to become due to Creditor arising out of Subject's Obligations; (b) to pay on demand all losses, costs, and expenses which may be suffered by Creditor by reason of Subject's default or default of any Guarantor hereunder and Creditor's reasonable attorneys' fees ; (c) to be bound by and to pay on demand to Creditor any deficiency established by a liquidation of Subject's Obligations or Security securing Subject's Obligations, with or without notice to any or all Guarantors; (d) that Guarantor hereby irrevocably appoints Creditor as the Guarantor's Attorney-in-Fact, coupled with an interest, to make claim for, settle, resolve, receive payment of, and execute and endorse all documents, checks or drafts received in payment for any loss or damage under any insurance policy which insures any property which may be collateral securing the obligations of Subject to Creditor;  (e) Guarantor will not allow a Blocked Person to have an ownership interest in or control of Guarantor. "Blocked Person" means any person or entity that is now or at any time (i) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list, or (ii) whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law, including any executive order of any branch or department of the United States government or (iii) otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over Holder, to be a person with whom Holder is not permitted to extend credit to or with regard to whom, a guarantor relationship may result in penalties against Holder or limitations on a holder's ability to enforce a transaction; and (f) that no Guarantor shall be released or discharged, either in whole or in part, by Creditors failure or delay to perfect or continue the perfection of any security interest in any Security which secures the Obligations of Subject or any Guarantor to Creditor, or to protect the Security covered by such security interest or by any waiver, subordination or release of any security interest. Guarantors agree to pay to Creditor all costs and expenses, including attorneys' fees, incurred by Creditor in exercising any right, power or remedy against the Subject or under any other agreement related to any Obligation, conferred by this Secured Guaranty, or in the enforcement of this Secured Guaranty, whether or not any action is filed in connection therewith.  Until paid to Creditor, such amounts shall bear interest at the highest rate allowed by any instruments evidencing the Obligations. Guarantor's liability to Creditor hereunder shall not be released, impaired or satisfied for any reason until all Obligations of Subject have been fully and indefeasibly paid and performed, with interest. Guarantors agree that the filing of a complaint or other initial filing in any action to enforce this Guaranty shall constitute an acceptable demand for payment and performance hereunder without any prior demand.

5.    No termination hereof shall be affected by the death or dissolution of Guarantor(s). No termination shall be effective except by notice sent to Creditor by certified mail return receipt requested naming a termination date effective not less than 90 days after the receipt of such notice by Creditor. Such notice will not be effective as to any Guarantor who has not given such notice or affect any transaction entered into prior to the effective date of termination or affect the accrual of interest, attorney's fees, costs and expenses or other amounts accruing on any Obligations incurred prior to termination.

GTY.SEC.0922F

COPYRIGHT 2022 COMMERCIAL CREDIT GROUP INC.



6.    Each of the Guarantors waives: (a) notice of acceptance hereof; presentment, demand, protest and notice of nonpayment or protest as to any note or Obligation signed, accepted, endorsed or assigned to Creditor by Subject; any and all rights of subrogation, reimbursement, indemnity, exoneration, contribution or any other claim which any of us may now or hereafter have against Subject or any other person directly or contingently liable for the Obligations guaranteed hereunder, or against or with respect to Subject's property (including, without limitation, property collateralizing its Obligations to Creditor), arising from the existence or performance of this Guaranty; (b) all exemptions and homestead laws and any other demands and notices required by law, to the extent permitted by applicable law; (c) all claims, setoffs and counterclaims now or hereafter arising; (d) any and all defenses based on suretyship, impairment of collateral or Security, or any other applicable law, including without limitation all rights and defenses arising out of (i) an election of remedies by Creditor even though that election of remedies may have impaired rights of subrogation and reimbursement against Subject by operation of law or otherwise, (ii) protections afforded to Subject pursuant to antideficiency or similar laws limiting or discharging Subject's Obligations to Creditor, (iii) the invalidity or unenforceability of this guaranty, (iv) the failure to notify any Guarantor of the disposition of any Security securing the Obligations of Subject, (v) the commercial reasonableness of such disposition or the impairment, however caused, of the value of such Security, (vi) any bankruptcy, extensions, stays, moratoria or other relief granted to Subject or any Guarantor pursuant to any statute presently in force or hereafter enacted and (vii) any duty on Creditor's part (should such duty exist) to disclose to any or all Guarantors any matter, fact or thing related to the business operations or condition (financial or otherwise) of Subject or its affiliates or property, whether now or hereafter known by Creditor; and (e) any right to require Creditor to proceed against Subject or any other guarantor, other party, or Security for any Obligation. ; (f) notice of extensions, modifications, renewals or novation of the Obligations, of any new transactions between Creditor or any affiliate of Commercial Credit, Inc. and Subject and/or any Guarantor, and of changes in the financial condition of, ownership of, or business structure of Subject or any other Guarantor. Guarantor agrees and represents that Guarantor has relied on its own due diligence in making an independent appraisal of Subject, Subject's business affairs and financial condition, and any Security; Guarantor will continue to be responsible for making an independent appraisal of such matters; and Guarantor has not relied on Creditor or any of Creditor's affiliates or representatives for information regarding Subject or any Security. Guarantors agree that all present and future indebtedness of Subject to Guarantors are hereby subordinated to, assigned and transferred to Creditor and pledged and made security for the Obligations. Guarantor shall have no right of subrogation against Subject unless and until the Obligations are paid in full, and Creditor shall have all the rights and remedies of Guarantors in any bankruptcy or insolvency proceedings of Subject unless and until the Obligations are paid in full.

7.    Creditor may at any time and from time to time, without the consent of, or notice to Guarantors and without affecting or impairing the obligation of any Guarantor hereunder, do any of the following: (a) renew, increase, extend (including extensions beyond the original term of the respective instrument), modify (including covenants, conditions, changes in interest rates or fees, or amounts and/or timing of payments), release or discharge any Obligations of Subject, of its customers, of co-guarantors (whether hereunder or under a separate instrument) or of any other party at any time directly or contingently liable for the payment or performance of any of said Obligations; (b) extend additional credit to Subject which additional credit shall become additional Obligations hereunder; (c) accept partial payments of said Obligations; (d) accept new or additional documents, instruments or agreements relating to or in substitution of said Obligations; (e) settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate any of said Obligations and the Security thereunder in any manner or any other guarantee thereof; (f) consent to the transfer or return of the Security, take and hold additional security or guaranties for said Obligations; (g) amend, exchange, release or waive any Security or guaranty; and/or (h) bid and purchase at any public or private sale of security securing Subject's Obligations and apply any proceeds or security to such Obligations, and direct the order and manner of sale.

8.    If a claim is made upon Creditor at any time for repayment or recovery of any amount(s) or other value received by Creditor, from any source, in payment of or on account of any of the Obligations of Subject guaranteed hereunder and Creditor repays or otherwise becomes liable for all or any part of such claim by reason of: (a) any judgment, decree or order of any court or administrative body having competent jurisdiction; or (b) any settlement or compromise of any such claim; Guarantors shall remain jointly and severally liable to Creditor hereunder for the amount so repaid or for which Creditor is otherwise liable to the same extent as if such amount(s) had never been received by Creditor, notwithstanding any termination hereof or the cancellation of any note or other agreement evidencing any of the Obligations of Subject.

9.    Upon any default hereunder, each Guarantor shall immediately deliver possession of their respective Collateral to Creditor, and Creditor, without demand or notice, in addition to any other remedies provided herein, may exercise any of the following remedies: (a) Take possession of all or part the Collateral, at any time, wherever it may be, and to enter any premises, with or without process of law, and search for, take possession of, remove, or keep and store the Collateral on said premises until sold, without liability for trespass nor charge for storage; (b) Sell the Collateral or any part thereof and all of the Guarantor's equity of redemption therein at public or private sale, for cash or on credit, and on such terms as Creditor may in its sole discretion elect, in such county and at such places as Creditor may elect and without having the Collateral at the place of sale. In the event Creditor sells all or part of the Collateral at public or private sale, then (i) Creditor shall not be required to refurbish, repair or otherwise incur any expenses in preparing Collateral for sale but may sell its interest therein on an "AS-IS," "WHERE-IS" basis; (ii) Creditor may bid or become the purchaser at any such sale and Guarantor waives any and all rights of redemption from any such sale; (iii) Any public sale will be deemed commercially reasonable if notice thereof shall be mailed to Guarantor at least 10 days before such sale and advertised in at least one newspaper of general circulation in the area of the sale at least twice prior to the date of sale and if upon terms of 25% cash down with the balance payable in good funds within 24 hours or other more favorable terms in the discretion of Creditor; (iv) The proceeds of any public or private sale shall first be applied to the costs and expenses of Creditor including but not limited to recovering, transporting, storing, refurbishing, and/or selling the items sold, attorneys' fees, court costs, bond and insurance premiums, advertising, postage and publishing costs, and sales commissions. And second to the payment, partly or entirely, of any of the Obligations as Creditor may in its sole discretion elect, returning the excess, if any, to Guarantor or such other party in interest as the required by law; Guarantor shall remain liable to Creditor for any deficiency plus interest thereon as provided above; (v) Any private sale shall be deemed commercially reasonable if notice thereof shall be mailed to Guarantor at least 10 days before the sale date stated therein at the address indicated above, and credit given for the full price stated, less attorneys' fees costs and expenses. No action taken by Creditor shall release any Guarantor or their respective Collateral from any of its Obligations to Creditor hereunder. Each Guarantor acknowledges and agrees that in any action or proceeding brought by Creditor to obtain possession of any Collateral, Creditor shall be entitled to issuance of a writ or order of possession (or similar legal process) without the necessity of posting a bond, security or other undertaking which is hereby waived by Guarantor and if Guarantor contests Creditor's right to possession of any Collateral in any action or proceeding, Guarantor shall post a bond (issued by a national insurer authorized to issue such bonds in the jurisdiction of such action or proceeding) in an amount equal to twice the amount in controversy in such action or proceeding or twice the amount of Guarantor's unpaid Obligations to Creditor, whichever is less. Creditor may without prior notice to or demand upon Guarantor and with or without the exercise of any of Creditor's other rights or remedies, apply toward the payment of Guarantor's Obligations (at any time owing to Creditor) any checks, drafts, notes, balances, reserves, accounts and sums belonging to or owing to Guarantor and coming into Creditor's possession and for such purpose may endorse Guarantor's name on any instrument or document payable to Guarantor (whether for deposit, collection, discount or negotiation). Without notice to Guarantor, Creditor may apply such sums or change applications of sums previously paid and/or to be paid to Creditor, to such Obligations as Creditor in its sole discretion may choose. The exercise or partial exercise of any remedy shall not be construed as a waiver of any other remedy nor constitute an election of remedies.

**10. THE CREDITOR AND EACH OF THE GUARANTORS HERE BY AGREE TO THE EXCLUSIVE VENUE AND JURISDICTION OF ANY STATE OR FEDERAL COURT PRESIDING IN MECKLENBURG COUNTY NORTH CAROLINA FOR ALL ACTIONS, PROCEEDINGS, CLAIMS, COUNTERCLAIMS OR CROSSCLAIMS ARISING DIRECTLY OR INDIRECTLY IN CONNECTION WITH, OUT OF, OR IN ANY WAY RELATED TO THIS GUARANTY, WITH THE SOLE EXCEPTIONS THAT AN ACTION TO RECOVER POSSESSION OF ALL OR PART OF THE SECURITY OR ANY OTHER ASSETS OF SUBJECT OR ANY OF**

GTY.SEC.0922F

COPYRIGHT 2022 COMMERCIAL CREDIT GROUP INC.

*K.F.*

Document Ref: 7JUO6-PKEYM-HC5SF-NFPGX

THE GUARANTORS HOWEVER DENOMINATED, MAY, IN THE SOLE DISCRETION OF CREDITOR, BE BROUGHT IN A STATE OR FEDERAL COURT HAVING JURISDICTION OVER SUCH SECURITY AND/OR ASSETS, AND THAT JUDGMENTS MAY BE CONFESSED, ENTERED, OR ENFORCED IN ANY JURISDICTION WHERE SUBJECT, OR ANY GUARANTOR, OR SECURITY AND/OR ANY OTHER ASSETS OF SUBJECT, OR GUARANTOR MAY BE LOCATED. EACH GUARANTOR WAIVES ANY RIGHT THEY OR ANY OF THEM MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT IN ACCORDANCE HEREWITH. EACH GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY OF ANY AND ALL CLAIMS, DEFENSES, COUNTERCLAIMS, CROSSCLAIMS AND SETOFF OR RECOUPMENT CLAIMS ARISING EITHER DIRECTLY OR INDIRECTLY BETWEEN OR AMONG THEM AND/OR INVOLVING ANY PERSON OR ENTITY CLAIMING ANY RIGHTS ACQUIRED BY, THROUGH OR UNDER ANY PARTY AND FURTHER WAIVES ANY AND ALL RIGHT TO CLAIM OR RECOVER ANY PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO ACTUAL DAMAGES.

11. Intending that each and every provision of this Guaranty be fully effective and enforceable according to its terms, Creditor, Guarantors and Subject agree that the validity, enforceability and effectiveness of each provision hereof and the obligations, rights and remedies of Creditor and Guarantors in any way related to or arising under this Guaranty shall be governed by and construed in accordance with the laws of the State of Delaware (excluding its choice of law rules). Guarantors shall execute, acknowledge and deliver to Creditor all documents, and shall take all actions, reasonably required by Creditor from time to time to confirm or give effect to the matters set forth herein, or otherwise to carry out the purposes of this Guaranty. If any one or more provisions hereof are in conflict with any statute or law and thus not valid or enforceable, then each such provision shall be deemed null and void but only to the extent of such conflict and without invalidating or affecting the remaining provisions hereof.

12. This Guaranty constitutes the entire agreement of the Guarantors regarding the guaranty of Subject's Obligations to Creditor. No failure to exercise, no delay in exercising, and no single or partial exercise on the part of Creditor of any right, privilege, remedy, or power under this Guaranty, shall operate as a waiver thereof or preclude Creditor from exercising any other right, privilege, remedy or power under this Guaranty. No waiver of any provision of this Guaranty shall be effective unless in a writing, signed by a duly authorized officer of the party to be charged, and no amendment, supplement or other modification of this Guaranty shall be effective unless in writing signed by the Guarantor relative to whom such writing applies. This instrument constitutes the entire agreement between the parties. This Guaranty cannot be modified or terminated orally. Only a written instrument, signed by an authorized officer of the Creditor, shall be effective to modify or terminate any obligation of a Guarantor to Creditor or this Guaranty but only to the extent specifically set forth therein.

13. This Guaranty may be assigned, without notice to Guarantor, and upon such assignment Guarantor agrees not to assert against any assignee hereof any defense, set-off, recoupment, claim, counterclaim or cross-claim which Guarantor may have against Creditor, whether arising hereunder or otherwise, and such assignee shall be entitled to at least the same rights as Creditor. All of the rights, remedies, options, privileges and elections given to the original Creditor hereunder shall inure to the benefit of any assignee, transferee or holder of this Guaranty, and their respective successors and assigns. Guarantors may not assign or delegate any duty or obligation hereunder. This Guaranty shall bind each Guarantor's respective heirs, administrators, representatives, successors, and assigns. All of Creditor's rights hereunder are cumulative and not alternative.

Dated: <u>April 13, 2023</u>

NOTE: Individual guarantors must sign without titles

**Individual Guarantors**

| **Name** | **Signature** | **Address** |
|---|---|---|
| | | |

**Corporate Guarantors**

| **Name of Corporation/LLC** | **By:** | **Its:** |
|---|---|---|
| Mulford Construction Co., Inc. | *Kurt Merle Fowler* | President |
| | Kurt Merle Fowler | |

COPYRIGHT 2022 COMMERCIAL CREDIT GROUP INC.

Document Ref: 7JUO6-PKEYM-HC5SF-NFPGX