**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| **MULFORD CONSTRUCTION CO., INC.,** | ) | Case No. 26-13271 (LSS) |
| Debtor. | ) | |

**JOINT CONSENT MOTION TO APPROVE REJECTION OF CONTRACT AND FOR ENTRY OF AGREED CONSENT ORDER**

Mulford Construction Co., Inc. ("Debtor") and Sage Custom Homes, LLC ("Sage", together with Debtor, the "Parties"), by counsel, and respectfully move this Court to approve rejection of contract and for entry of agreed consent order, a copy of which is attached hereto as **Exhibit A** (the "Consent Order"), and incorporated by reference. In support of this Motion, the Parties state as follows:

**I. JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference 2012-05 from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory and procedural bases for the relief requested are 11 U.S.C. §§ 105(a), 362, 365(a), 365(d)(2), and 554; Federal Rules of Bankruptcy Procedure 4001, 6006, and 9019; and Local Bankruptcy Rules 6006-1 and 9013-2. The compromise embodied in the Consent Order is subject to approval under Bankruptcy Rule 9019.

## II. BACKGROUND

3. On March 27, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is a Maryland corporation providing heavy civil construction services and has been operating as debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

4. On February 16, 2024, the Debtor and Sage entered into a construction contract for work at the Enclave at Brandywine (the "Contract"). The Contract is an executory contract within the meaning of 11 U.S.C. § 365 because material obligations remain due on both sides. Sage is the owner of the project known as Brandywine (the Enclave at Brandywine) (the "Project").

5. Sage obtained construction financing from United Bank (the "Construction Lender") for construction of the Project. Under its loan documents with the Construction Lender, the Construction Lender must approve all draws for payment to contractors, subcontractors, materialmen, and suppliers on the Project.

6. Pursuant to the Contract, the Debtor is to furnish certain labor, tools, equipment, material, and other services at the Project.

7. The Debtor to date has not paid all amounts due and owing to various subcontractors and suppliers furnishing labor and materials in connection with the Contract.

8. Under the terms of the Contract, the Debtor is required to submit lien waivers evidencing payment to certain subcontractors, suppliers, and vendors in connection with performance of the Debtor's work as a condition precedent to receiving payment from Sage.

9. The retention balance under the Contract, which is only to be paid pending the Debtor's submission of lien waivers and final completion of all of Debtor's work under the

Contract, is $494,191.95 (the "Retention Balance"). Additional work will be required to complete the Project.

10. The Debtor owes its subcontractors, suppliers, and vendors (the "Vendors") approximately $481,321.46 (the "Vendor Debt") in both pre- and post-petition obligations in connection with the Contract.

11. For the dollar amounts contemplated herein, the payment terms in the Consent Order shall be controlling.

12. On July 27, 2026, Sage filed Proof of Claim No. 120 ("Sage's Proof of Claim"), asserting an unliquidated claim under the Contract and reserving all rights.

13. On August 18, 2026, the Debtor filed its Motion to Convert Case to Chapter 7 [Dkt. 381] pursuant to section 1112(a) of the Bankruptcy Code and Bankruptcy Rule 1017(f). The Debtor ceased business operations as of August 17, 2026, and conversion to chapter 7 is anticipated.

14. The Debtor and Sage have agreed, in the exercise of sound business judgment, that the Contract should be rejected effective nunc pro tunc to the Petition Date, and that the additional relief set forth below is appropriate to resolve issues arising from the Contract and the Project.

## III. RELIEF REQUESTED

15. The Consent Order resolves and compromises disputes between the Debtor and Sage concerning the Contract, completion of the work to be performed under the Contract, the Retention Balance, the Vendor Debt, the lien waiver and payment conditions under the Contract, the ownership and disposition of materials at the Project site, and the parties' respective claims arising from or relating to the Contract and the Project.

16. Specifically, the Consent Order provides the following relief:

(a) Rejection of the Contract pursuant to 11 U.S.C. §§ 365(a) and 365(d)(2), effective nunc pro tunc to the Petition Date of March 27, 2026;

(b) Within seven (7) business days after (i) entry of the Consent Order; (ii) approval by the Construction Lender of Sage's draw submission; and (iii) the Debtor's satisfaction of its requirements set forth in Paragraphs 6 and 7 of the Consent Order, Sage shall pay to the Debtor's estate the sum of Twenty-Five Thousand Dollars ($25,000.00) (the "Debtor Final Payment"), which represents: (a) $12,870.49, the amount of the Retention Balance less the amount of the Vendor Debt; plus (b) $12,129.51 as consideration to the Debtor and its estate for the relief in the Consent Order. The Debtor Final Payment shall be made by wire transfer pursuant to instructions provided by the Debtor or its counsel, or, if a chapter 7 trustee has been appointed at the time of payment, pursuant to wire instructions provided by the chapter 7 trustee or its counsel;

(c) Except for the conditions set forth in the Consent Order, including but not limited to the Debtor's obligations under Paragraphs 6 and 7 of the Consent Order, the Debtor is not required to furnish lien waivers or satisfy any of the other payment conditions under the Contract as a condition to any payment contemplated by the Consent Order. For the avoidance of doubt, this subparagraph relieves only the Debtor of the lien-waiver and payment conditions under the Contract; it does not relieve any Vendor of its obligation to deliver a lien release as a condition of receiving payment;

(d) Effective upon entry of the Consent Order, the Debtor and its estate release any and all claims, causes of action, and demands against Sage and its Construction Lender arising from or relating to the Contract, the Project, or any payments made by Sage to the Debtor's Vendors, whether known or unknown, accrued or unaccrued, including any avoidance action claims under sections 544, 547, 548, 549, and 550 of the Bankruptcy Code. Further, effective upon entry of the Consent Order, the Debtor and its estate release any and all claims, causes of action, and demands against any of its Vendors on the Project arising from or relating to any payments made by either the Debtor or Sage to the Debtor's Vendors, whether known or unknown, accrued or unaccrued, including any avoidance action claims under sections 544, 547, 548, 549, and 550 of the Bankruptcy Code. The Releases in this subparagraph are binding on the Debtor, the Debtor's estate, and any subsequently appointed chapter 7 trustee;

(e) The Debtor and Sage will work together to transfer as many Project documents as possible, but specifically, all invoices from Vendors, Vendor bids, executed lien waivers from Vendors, warranties, subcontracts, and purchase orders in both hard copy and electronic form, to the extent available;

(f) The Debtor shall immediately provide Sage with unrestricted access to all materials located at the Project site, including but not limited to, the four (4) locked containers located thereon. Pursuant to 11 U.S.C. § 554, the Debtor's estate hereby abandons all materials located at the Project site that have been paid for by Sage, including all materials located within said four locked containers, free and clear of any interest of the Debtor and its estate, with title confirmed in Sage upon entry of the Consent Order. Title to such materials is confirmed in Sage, and the Debtor shall execute any documentation reasonably necessary to effectuate this transfer;

(g) The automatic stay imposed by 11 U.S.C. § 362(a) is hereby modified to the extent necessary to permit Sage to set off and reduce the Debtor's Vendor Debt by $481,321.46 (the "Setoff"), effective as of the date of entry of the Consent Order. As soon as practicable after both entry of the Consent Order and approval by the Construction Lender of Sage's draw submission, Sage shall pay the Vendor Debt in full and issue the respective payments to the Vendors (the "Vendor Payments"). Sage shall notify and provide proof to the Debtor, and as appropriate, any subsequently appointed chapter 7 trustee, of any Vendor Payments made by Sage, as any such direct payments will reduce amounts otherwise owed by the Debtor to such Vendors. In the event a Vendor accepts less than one hundred percent of what is owed as Vendor Debt from the Debtor, Sage shall require that Vendor to execute a release with the Debtor and the Debtor's estate as intended third party beneficiaries for any reduced amount paid on the Vendor's claim such that the Vendor's claim against the Debtor's estate is reduced by the entire amount of the Vendor Debt, regardless of any discount. Nothing herein shall be construed as a waiver of the right of the Debtor or any subsequently appointed chapter 7 trustee to object to any claims asserted by a Vendor, including due to the Vendor Payments being made as contemplated herein;

(h) Sage is authorized to immediately reprocure and complete, or cause to be reprocured and completed, the work covered by the Contract, without further order of this Court;

(i) The Consent Order shall remain in place and carry full force, weight, and effect, notwithstanding any future conversion of this bankruptcy case to a proceeding under chapter 7 of the Bankruptcy Code or the appointment of a trustee. The Consent Order and its approval of the compromise is binding on the Debtor, the Debtor's estate, and any subsequently appointed chapter 7 trustee, any successor trustee, and any successor in interest to the Debtor's estate;

(j) Notwithstanding Bankruptcy Rules 6004(h), 7062, and 9014, the Consent Order shall be effective immediately upon entry and shall not be stayed;

(k) This Court retains exclusive jurisdiction over all matters arising from or relating to the interpretation, implementation, and enforcement of the Consent Order.

(l) Effective upon entry of the Consent Order, Sage releases any and all claims, causes of action, and demands against the Debtor and its estate arising from or relating to the Contract, the Project, and/or any payments made by Sage to the Debtor's Vendors, whether known or unknown, accrued or unaccrued. Within seven (7) days of the Consent Order becoming final and non-appealable, Sage will withdraw its proof of claim against the Debtor. The Releases in this subparagraph are binding on the Debtor, the Debtor's estate, and any subsequently appointed chapter 7 trustee.

17. Compromises are favored in bankruptcy because they minimize litigation and expedite the administration of the estate. A bankruptcy court must nonetheless exercise its own informed, independent judgment to determine whether a proposed settlement is fair and equitable, and the ultimate inquiry is whether the settlement is in the best interest of the estate. *See Official Comm. of Unsecured Creditors of Bond v. White Plains Joint Venture (In re Bond)*, No. 92-2295, 1994 U.S. App. LEXIS 1282, at *6-7 (4th Cir. Jan. 26, 1994) (per curiam) (unpublished). Central to that determination is a comparison of the settlement's terms with the litigation's probable cost and benefits. *Id.* Where the parties have negotiated at arm's length, there is no hint of collusion, and the settlement offers benefits to the estate, a court does not abuse its discretion by deferring to the business judgment of the parties who negotiated the compromise. *Id.*

18. Courts in this District weigh four factors in applying that standard: (i) the probability of success in litigation; (ii) the potential difficulties in collection; (iii) the complexity of the litigation and the expense, inconvenience, and delay necessarily involved therein; and (iv) the interest of creditors. *See In re Final Analysis, Inc.*, 417 B.R. 332, 341-42 (Bankr. D. Md. 2009). The proponent of the settlement bears the burden of establishing that it is fair and equitable and should be approved. *Id.*

19. Here, the Debtor has ceased operations and has moved to convert this case to chapter 7, so litigation over the Contract, the Retention Balance, and the Vendor Debt would be expensive and uncertain, and any recovery would be difficult and delayed. The Consent Order instead delivers value to the estate. Specifically, any Vendor Payments made by Sage will reduce amounts otherwise owed by the Debtor to such Vendors, thereby reducing claims against the Debtor's estate without protracted litigation. The compromise was negotiated in good faith and at arm's length between the Debtor and Sage, each represented by counsel, and there is no collusion between them. Accordingly, the compromise is fair, equitable, and in the best interests of the estate and should be approved under Bankruptcy Rule 9019.

**IV. WAIVER OF MEMORANDUM OF LAW**

20. Pursuant to Local Bankruptcy Rule 9013-2, the Parties waive the requirement of a memorandum of law in support of this Motion. The legal bases for the relief requested are well established under 11 U.S.C. §§ 105(a), 362, 365(a), 365(d)(2), and 554; Federal Rules of Bankruptcy Procedure 4001, 6006, and 9019; and Local Bankruptcy Rules 6006-1 and 9013-2. The Consent Order embodies a negotiated compromise of the Parties' disputes concerning the Contract, the Retention Balance, and the Vendor Debt. The compromise is fair, equitable, and in the best interests of the estate and should be approved under Bankruptcy Rule 9019. *See Official Comm. of Unsecured Creditors of Bond v. White Plains Joint Venture (In re Bond)*, No. 92-2295, 1994 U.S. App. LEXIS 1282, at *6-7 (4th Cir. Jan. 26, 1994) (per curiam) (unpublished); *In re Final Analysis, Inc.*, 417 B.R. 332, 341-42 (Bankr. D. Md. 2009).

21. The Contract is executory under the Countryman test as recognized in the Fourth Circuit. *See RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.)*, 361 F.3d 257, 264 (4th Cir. 2004); *Gloria Mfg. Corp. v. Int'l Ladies' Garment Workers' Union*, 734 F.2d 1020, 1022 (4th Cir.

1984). Rejection is appropriate under the business judgment standard. *See Lubrizol Ents., Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1047 (4th Cir. 1985).

22. The Debtor consents to, and joins in, the relief requested by this Motion. As such, a separate memorandum would not materially assist the Court.

**WHEREFORE**, Sage Custom Homes, LLC and Mulford Construction Co., Inc. jointly request that this Court enter the proposed Consent Order between the Debtor and Sage Custom Homes, LLC rejecting the Contract as Exhibit A and grant such other and further relief as is just and proper.

DATED: September 4, 2026

Respectfully submitted,

*/s/ Marguerite Lee DeVoll*

Jennifer L. Kneeland (Federal Bar No. 14916)
Marguerite Lee DeVoll (Federal Bar No. 13899)
Joel W. Ruderman (Federal Bar No. 13125)
**WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.**
1765 Greensboro Station Place, Suite 1000
McLean, VA 22102
Telephone: 703-749-1000
Facsimile: 703-893-8029
jkneeland@watttieder.com
mdevoll@watttieder.com
jruderman@watttieder.com

*Counsel for Sage Custom Homes, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of September, 2026, I caused a copy of the foregoing to be served via the Court's CM/ECF system on all parties registered to receive electronic notice in this case on the following:

- **Nathan D. Adler** nda@nqgrg.com, terry@nqgrg.com
- **Brian E. Barkley** bbarkley@barkenlaw.com
- **Jodie E. Bekman** jbekman@gfrlaw.com, dferguson@gfrlaw.com
- **Garrett E. Brierley** brierley@councilbaradel.com
- **Eugene A Burcher** eaburcher@thelandlawyers.com
- **Jill D. Caravaggio** jill@jill-lawoffice.net, paralegal@jill-lawoffice.net
- **Aaron L. Casagrande** Aaron.casagrande@Icemiller.com
- **Richard L. Costella** rcostella@tydings.com, myoung@tydings.com;pcoolbaugh@tydings.com
- **Andrea Campbell Davison** ADavison@beankinney.com, dadragna@beankinney.com
- **Marguerite Lee DeVoll** mdevoll@watttieder.com, mlindau@watttieder.com
- **Emily Devan** edevan@milesstockbridge.com
- **Jessica Lynne Duvall** jduvall@levingann.com, ltress@levingann.com
- **Mark Edelson** medelson@silvermanthompson.com, dlawal@mdattorney.com
- **John Tucker Farnum** jfarnum@milesstockbridge.com, jfarnumecfnotices@gmail.com
- **Justin Philip Fasano** jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com;tmackey@mhlawyers.com;mevans@mhlawyers.com;cmartin@mhlawyers.com;Fasano.JustinR92003@notify.bestcase.com
- **Ashley N Fellona** ashley.fellona@saul.com, janice.mast@saul.com
- **John David Folds** dfolds@bakerdonelson.com, sparson@bakerdonelson.com
- **James Durling Fullerton** jfullerton@fullertonlaw.com
- **Stanford G. Gann** sgannjr@levingann.com
- **Stephen B. Gerald** sgerald@tydings.com
- **Shawn Haught** shaught@wardcolaw.com
- **Alan C. Hochheiser** ahochheiser@mauricewutscher.com
- **Kevin G. Hroblak** kevin.hroblak@icemiller.com, madelin.hill@icemiller.com
- **Darnell E. Ingram** darnell@deingram.com
- **Michael Kalish** mkalish@thelandlawyers.com, eaburcher@thelandlawyers.com;mandrews@thelandlawyers.com
- **Shanna Kaminski** skaminski@kaminskilawpllc.com
- **Emmit F Kellar** ekellar@bakerdonelson.com, jbedell@bakerdonelson.com
- **Nicole C. Kenworthy** bdept@mrrlaw.net
- **Michael J Klima** Jklima@kpdlawgroup.com
- **Jennifer Larkin Kneeland** jkneeland@watttieder.com, mlindau@watttieder.com
- **Michael J. Levin** mlevin@silvermanthompson.com
- **James McNally** jmcnally@cohenseglias.com, ddefoor@cohenseglias.com
- **Courtney L. Morgan** courtney.l.morgan@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV

- **Pierce C Murphy** pmurphy@mdattorney.com, efiling@silvermanthompson.com
- **Andrew Justin Narod** anarod@bradley.com, tlynch@bradley.com
- **Craig Palik** cpalik@mhlawyers.com, cpalik@ecf.inforuptcy.com;Palik.CraigR92003@notify.bestcase.com;mevans@mhlawyers.com;cmartin@mhlawyers.com
- **Brandy Michelle Rapp** brapp@whitefordlaw.com
- **Eli Robbins** erobbins@harrisonlawgroup.com, swilson@harrisonlawgroup.com
- **Scott R. Robinson** scottr@hrdlawyers.com, darcyf@hrdlawyers.com
- **Joel Ruderman** jruderman@watttieder.com
- **Marc E. Shach** mes@cooncolelaw.com, mes@cooncolelaw.com;ccc@cooncolelaw.com;dhc@cooncolelaw.com;zjac@cooncolelaw.com;cmh@cooncolelaw.com;grg@cooncolelaw.com;abh@cooncolelaw.com
- **Dennis J. Shaffer** dshaffer@tydings.com, scalloway@tydings.com;MYoung@tydings.com
- **Robert G. Shuster** rob@shusterlaw.com, courts@shusterlaw.com
- **Howard S. Stevens** hstevens@pascalestevens.com
- **Lisa Yonka Stevens** lstevens@milesstockbridge.com
- **Andrew C. Stone** astone@andrewstonelaw.com, r43012@notify.bestcase.com
- **Brent C. Strickland** bstrickland@whitefordlaw.com, mbaum@whitefordlaw.com;brent-strickland-3227@ecf.pacerpro.com
- **US Trustee - Greenbelt** USTPRegion04.GB.ECF@USDOJ.GOV
- **Jill C Walters** jwalters@bakerdonelson.com
- **Megan Young** myoung@tydings.com

*/s/ Marguerite Lee DeVoll*
Marguerite Lee DeVoll